STATE OF NEBRASKA, APPELLEE, V. ALLAN L. ANDERSON, APPELLANT.

512 N.W.2d 367

Filed February 25, 1994. No. S-92-475.

James Martin Davis for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

By jury verdict, Allan L. Anderson was convicted of manslaughter and use of a firearm to commit a felony. He was sentenced to not less than 4 nor more than 6 years' imprisonment for the manslaughter conviction and to not less than 4 nor more than 6 years' imprisonment for the firearm conviction, the sentences to run consecutively.

The Nebraska Court of Appeals affirmed Anderson's convictions and sentences by the district court for Douglas County. See *State v. Anderson*, 1 Neb. App. 914, 511 N.W.2d 174 (1993). While we do not embrace its rationale, we affirm the decision of the Court of Appeals.

## FACTS

The facts of this case, as relevant to the issue before the court, are as follows:

Anderson's killing of Virgil Cook shortly after midnight on October 27, 1991, was the culmination of a running feud between the Anderson family and a gang of young people known as the East Omaha Rats. For several weeks preceding the killing, the Anderson family was subjected to a pattern of harassment, apparently by two gang members and their friends, during which cars were driven by the Anderson home periodically and threatening telephone calls were made to the Andersons.

On October 26, Anderson went to a bar at approximately 11:15 p.m. While he was gone, yet another disturbance occurred at the Anderson residence at approximately 12:05 a.m. on October 27. Anderson's wife called her husband at the

bar. Anderson arrived home within 30 to 50 seconds after the disturbance ended. After a conversation with his wife, Anderson left in his pickup truck and was gone for several minutes. At some point, Anderson encountered a blue and white Chevelle which was being driven by Cook's girlfriend.

The Anderson vehicle and the Chevelle eventually met and stopped at an intersection. A confrontation occurred between Cook, who had been a passenger in the Chevelle, and Anderson. Anderson testified that Cook began swinging at him with a baseball bat and in fact hit Anderson in the hand. Anderson, who was armed with a .45-caliber pistol, claims he began firing at the bat in self-defense. Cook died as the result of two bullet wounds to his chest.

Anderson returned home and notified police what had happened. He was taken into custody, and at 6:28 a.m., Anderson gave a taped statement to police officers. Anderson was charged by information with first degree murder and use of a firearm in the commission of a felony.

The State made a motion in limine to exclude Anderson's taped statement from evidence, which motion was sustained. During the trial, Anderson attempted to introduce the tape-recorded statement on two separate occasions. The State's objections to the statement's reception into evidence were sustained.

Anderson was convicted by a jury of manslaughter and use of a firearm to commit a felony. The Court of Appeals affirmed the convictions and sentences in all respects.

Anderson petitioned this court for further review, alleging that the Court of Appeals erred in affirming (1) the trial court's refusal to admit the tape-recorded statement made to police into evidence and (2) the trial court's failure to give separate jury instructions for voluntary and involuntary manslaughter. We granted Anderson's petition for further review, limited to the issue of whether Anderson's tape-recorded statement was admissible into evidence.

## STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those

instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Accord *State v. Wood, ante* p. 63, 511 N.W.2d 90 (1994).

## ANALYSIS

Preliminarily, we note that a defendant's out-of-court statement is inadmissible hearsay unless it comes within one of the exceptions to the hearsay rule. See *State v. Pelton*, 197 Neb. 412, 249 N.W.2d 484 (1977). Anderson argues that his tape-recorded statement was admissible to show his state of mind at the time he made the statement, as an excited utterance, and as a prior consistent statement. We disagree that the statement falls within any of these exceptions to the hearsay rule.

Anderson's statement is not admissible as a "statement of the declarant's then existing state of mind," Neb. Evid. R. 803(2), Neb. Rev. Stat. § 27-803(2) (Reissue 1989), unless his state of mind at the time the statement was made is a material element in the case. See *State v. Pelton, supra*.

Anderson argues that he was not thinking clearly when he made the taped statement due to a migraine headache, broken bones in his hand, and a lack of sleep, and that this affected his choice of words. While a defendant's state of mind at the time of making a statement may be relevant in some circumstances, we note that Anderson made a pretrial stipulation that his statement was subject to no constitutional infirmities and that the court found, pursuant to the stipulation, that Anderson had been properly advised of his *Miranda* rights.

That Anderson was tired and in pain at the time he made his statement is in no way relevant to the material elements of first degree murder or use of a firearm to commit a felony, the crimes with which he was charged. Therefore, the statement does not meet the requirements of *Pelton*, and it is not admissible under the state-of-mind exception.

For a statement to be admissible under rule 803(1), the "excited utterance" exception, it must be "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

A statement must meet the following criteria to qualify as an excited utterance: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990). The happenings of the evening which culminated in Anderson's shooting of Cook undoubtedly constituted a startling event, and Anderson's statement related to that event, thus satisfying the first two criteria.

However, Anderson's statement, which the record shows was made almost $6^1/2$ hours after the shooting, does not satisfy the requirement that the statement be made while under the stress of the event. The time lapse between the startling event and the statement is not dispositive, the crucial consideration being whether there has been time for conscious reflection. See *State v. Plant, supra*.

It is not necessary for us to speculate whether Anderson had time for conscious reflection before he made his taped statement, as Anderson admitted as much on cross-examination. The record reflects that the prosecutor had established that Anderson had been placed in an interview room at the police station after he had been taken into custody. The following exchange then occurred: "[Prosecutor:] Did you think about the events that had just transpired in the last few hours while you were in that room? [Anderson:] Of course." Because Anderson admitted he had time for conscious reflection on the event in question before making his statement, the statement is inadmissible under the excited utterance exception to the hearsay rule.

Finally, we turn to the issue of whether Anderson's taped statement was admissible as a prior consistent statement. Neb. Evid. R. 801(4), Neb. Rev. Stat. § 27-801(4) (Reissue 1989), states that

> [a] statement is not hearsay if: (a) [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him [of] recent fabrication or improper influence or motive.

The record shows that Anderson had testified on direct examination that after he returned home from the bar in response to his wife's telephone call, a blue Chevelle had driven by his house. Anderson testified that he inquired of his wife whether the Chevelle had been involved in the altercation that evening, and she indicated that it had been. Police officers involved in the investigation of the shooting testified that neither Anderson nor his wife or stepson mentioned the involvement of the blue Chevelle during their initial interviews.

On cross-examination, the prosecutor questioned Anderson about why he had not mentioned the Chevelle to the police officer who initially arrived at the Anderson home to investigate the shooting. The prosecutor also questioned Anderson about the fact that his wife's and stepson's taped statements to police contained no reference to the blue Chevelle being involved in the earlier altercation at the Anderson home. The obvious implication of this line of questioning was that Anderson fabricated his testimony that he had been told that the Chevelle was involved in the earlier altercation.

Anderson argues that because the prosecution implied that he fabricated his testimony that a blue and white Chevelle was involved in the altercation at his home on the night of October 26, he was entitled to rebut that charge with his taped statement. Anderson's taped statement included the following: "I believe my son and my wife and there was a friend of my son's there and they said something about guns and this blue Chevelle with a white top came by and said that's one of 'em . . . ."

Anderson contends that the State's charge of recent fabrication made his tape-recorded statement admissible for rehabilitative purposes, because his statements about the Chevelle in the tape-recorded statement were consistent with his trial testimony. The State argues that the statement was inadmissible because it was given after Anderson already had a motive to fabricate and that the statement therefore had no rehabilitative value. The Court of Appeals held that the statement was inadmissible as a prior consistent statement because Anderson already had a motive to fabricate after Cook had been shot and Anderson had been arrested.

A review of the record reflects that, while the tape recording

itself was not admitted into evidence, Anderson was permitted to testify as to the contents of the recording during his case in chief. On redirect examination, after the prosecutor asked impeaching questions of Anderson, defense counsel questioned Anderson about his taped statement:

Q. [Defense counsel:] You told [the police] *in that taped statement* when you sat down with them . . . that *your wife said or somebody there said or you asked them, Is* [*the blue Chevelle*] *one of them? And they said, Yes,* or something to that effect?

A. [Anderson:] Yes.

Q. You told them that in the earlier interview as well, didn't you?

A. Yes.

(Emphasis supplied.)

This testimony was admitted into evidence with no objection from the State. At that time, evidence of Anderson's prior consistent statement was placed before the jury, and admission of the tape recording into evidence would have been cumulative. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989). Cf. *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992) (holding that deposition testimony was inadmissible because it was cumulative to that already in the record).

Judicial discretion is implicit in rule 403 regarding exclusion of relevant evidence. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Accord *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). Because Anderson's tape-recorded statement would have been cumulative to Anderson's properly admitted trial testimony, exclusion of the taped statement from evidence did not constitute an abuse of discretion by the trial court. It was therefore unnecessary for the Court of Appeals to reach the issue of whether Anderson's taped statement was admissible as a prior consistent statement to rebut the State's charges of recent fabrication and improper motive.

Nonetheless, a judgment will not be reversed because a lower

court gave an incorrect reason for its decision if the result reached was correct. *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993). Although the Court of Appeals reached the right result, its discussion on the issue of prior consistent statements is mere dicta and should not be cited as precedent. The question of whether a declarant's prior consistent statement to rebut a charge of improper motive or recent fabrication may be admitted into evidence even though the prior statement is made after a motive to fabricate has arisen remains open for future determination.

## CONCLUSION

There being no merit to Anderson's contention that his tape-recorded statement was erroneously excluded from evidence, the decision of the Court of Appeals affirming Anderson's convictions and sentences is affirmed.

AFFIRMED.