STATE OF NEBRASKA, APPELLEE, V. SCOTT M. EARL, APPELLANT.

560 N.W.2d 491

Filed March 21, 1997.    No. S-96-058.

Jerry J. Fogarty, Deputy Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.
## STATEMENT OF CASE
Scott M. Earl appeals his conviction by jury for first degree sexual assault, Neb. Rev. Stat. § 28-319(1)(a) and (b) (Cum. Supp. 1994). Earl was sentenced to 10 to 12 years' imprisonment. Earl contends, in summary, that the district court erred in (1) overruling his competency objection to the testimony of the 6-year-old complainant, (2) excluding evidence of the complainant's sexual history, and (3) imposing an excessive sentence. Earl also asserts that the evidence adduced at trial was insufficient to support the conviction. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND
On May 24, 1995, the male complainant, 6-year-old N.E., disclosed to his mother that Earl, who had lived with the family from December 1994 until February 1995, had given him "bad touches." N.E. reported that Earl had fondled his penis and fellated him. N.E. was subsequently interviewed by a Grand Island

police officer and made similar disclosures about sexual abuse by Earl.

Earl was charged with first degree sexual assault in the district court, and after he pled not guilty, his case was set for a jury trial.

Prior to trial, Earl gave notice that he intended to offer evidence at trial of specific instances of N.E.'s past sexual behavior. This notice was in conformance with Nebraska's rape shield law, which requires that a defendant who intends to offer evidence of specific instances of a complainant's past sexual behavior give notice not later than 15 days before trial. Neb. Rev. Stat. § 28-321 (Reissue 1995).

A § 28-321 hearing was held regarding the admissibility of N.E.'s prior sexual behavior. For purposes of the hearing only, Earl offered, and the court received in evidence, the police reports in the instant case. Earl also requested that the court take judicial notice of the information filed in the district court, and the court did so. In relevant part, the police reports state that N.E.'s mother reported that N.E.'s 5-year-old female cousin had previously been sexually assaulted and had "taught [N.E.] all about sex" the previous summer. The mother reported she had discovered that N.E. and his cousin "were playing 'husband and wife' and pretending to have sex while they were totally nude" and that they took their clothes off and lay on each other. She reported that N.E. and his cousin had performed "some of the acts" that N.E. told her Earl had done to him.

At the § 28-321 hearing, Earl's counsel asserted the following grounds for admission of N.E.'s past sexual behavior:

> [B]asically, what we are asking for is to be allowed to *look into* the alleged victim's past sexual history regarding his exposure to the type of offense that Mr. Earl is accused of performing on the alleged victim here.
>
> The evidence will show that the alleged victim had contact with, I believe, two young ladies of approximately the same age of the alleged victim. These two young ladies had supposedly been sexually abused themselves and engaged in this type of conduct with the alleged victim and now the alleged victim is pointing a finger at Mr. Earl

saying, that this type of behavior occurred between the alleged victim and Mr. Earl.

The evidence we would be using is various witnesses in the case and perhaps the parents of the alleged victim and the two girls mentioned, two girls themselves, the alleged victim himself and anybody else involved in the police reports who have knowledge of this type of activity.

(Emphasis supplied.)

Earl argued that this "evidence" would explain how N.E. could have "come up" with the allegations against him. The State responded that the tendered "evidence" did not meet either of the exceptions to the rape shield law and was not relevant because it was not the same type of conduct as that charged against Earl.

The trial court held that neither of the statutory exceptions provided in § 28-321 was met because the tendered "evidence" did not go to the issue of consent or to an issue of physical evidence. Consequently, the trial court ruled that evidence of N.E.'s past sexual behavior with other children would not be allowed at trial. Earl renewed his offer of proof, i.e., the police reports, at trial, and the offer of proof was rejected by the court.

At trial, N.E. testified in the State's case in chief. Because Earl objected to N.E.'s competency as a witness, the court initially questioned N.E. outside of the presence of the jury. N.E. was able to tell the court his name, his age, the street on which he lived, and the city in which he lived. He was able to tell the court that he lived with his parents and sister, and to report his sister's name and age. N.E. was not able to tell the court his date of birth. He was able to tell the court the name of his school, his grade, his teacher's name, and the principal's name. N.E. was also able to inform the court of the occupations of both his mother and his father, although he could not identify the specific name of his mother's place of employment.

The court then questioned N.E. about veracity. N.E. knew that it was bad to tell a lie and that it was good to tell the truth. N.E. knew that one should keep a promise, and he correctly identified most of the trial judge's hypothetical statements as being either truthful or untruthful. The trial judge overruled

Earl's competency objection and allowed N.E. to testify based on the court's own examination of the witness.

N.E. testified that on one occasion Earl unzipped N.E.'s pants and "played with" and "thumped" N.E.'s "wiener," "sucked" N.E.'s "wiener" with his mouth, and placed his "wiener" in N.E.'s mouth. N.E. testified that Earl had told him that Earl would "beat [N.E.] up" if he told his parents. N.E.'s mother testified that when Earl first came to live with them, he was N.E.'s "hero," but that later N.E. did not want to be around Earl. She testified that after Earl left in February 1995, she asked N.E. several times whether Earl had given him "bad touches" and that N.E. ultimately disclosed the abuse to her on May 24, 1995.

The State also offered the testimony of the Grand Island police officer who interviewed N.E. The officer testified that he had discussed good touching and bad touching with N.E. and that N.E. reported the incidents with Earl to him. The officer testified that N.E. told him that the alleged abuse had occurred on five occasions.

Earl testified on his own behalf and denied sexually abusing N.E. during his stay with the family or at any other time. He testified that his relationship with N.E's mother had deteriorated and that he was asked to leave the residence as a result of disagreements with N.E.'s mother over financial matters.

A jury convicted Earl of first degree sexual assault. Earl timely appealed.

## ANALYSIS

### COMPETENCY OF WITNESS

In his first assignment of error, Earl asserts that the district court erred in allowing 6-year-old N.E. to testify at trial.

The question of competency of a child witness lies within the discretion of the trial court, and that determination will not be disturbed in the absence of an abuse of discretion. *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992); *In re Interest of M.L.S.*, 234 Neb. 570, 452 N.W.2d 39 (1990). The question as to the competency of a witness must be determined by the court, while the credibility and weight of the testimony are for the jury to determine. *State v. Guy*, 227 Neb. 610, 419 N.W.2d 152 (1988).

While no certain age has been deemed to be the age at which a child becomes competent to testify in a court of law, the court generally takes into consideration whether he or she is able to receive correct impressions by the senses, to recollect and narrate accurately, and to appreciate the moral duty to tell the truth. *State v. Roenfeldt, supra; In re Interest of M.L.S., supra.*

The record reveals that N.E. was able to accurately perceive and convey relevant information. He was able to report his name, his age, his street and city, his sister's name and age, his school and grade, the names of his teacher and principal, and the name of his father's workplace. While he was not able to identify the name of his mother's workplace, he did describe her occupation.

N.E. correctly answered a number of questions about the distinction between telling the truth and lying. While he was not able to eloquently define the concepts of lying, the truth, and a promise, he is not required to do so. Inability to define such words as "testimony," "oath," or "obligation of an oath" is not determinative of want of capacity of a child to be a witness. It is sufficient if, without being familiar with the use and meaning of such words, he has an adequate sense of the impropriety of falsehood, sufficient intelligence, and a proper appreciation for the obligation of an oath. See *Wells v. State*, 152 Neb. 668, 42 N.W.2d 363 (1950). N.E. knew that lies were bad and that the truth was good; he demonstrated that he could distinguish between truths and untruths, and he promised to tell the truth in court.

N.E. adequately demonstrated that he was able to receive correct impressions by his senses, could recollect and narrate intelligently, and appreciated the moral duty to tell the truth. Accordingly, we find no abuse of discretion in the district court's determination that N.E. was a competent witness.

## EVIDENCE OF N.E.'S PRIOR SEXUAL BEHAVIOR

In his next assignment of error, Earl asserts that the district court erred in excluding evidence of N.E.'s past sexual behavior under Nebraska's rape shield law. See § 28-321. Where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion,

except where judicial discretion is a factor involved in assessing admissibility. *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997). The admissibility of evidence is reviewed for an abuse of discretion where, as here, the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

Earl's stated purpose for attempting to elicit testimony regarding N.E.'s sexual history was to establish an alternative source for N.E.'s sexual knowledge, in order to rebut the inference that a child of such tender years could not possess the explicit sexual knowledge he had unless Earl sexually assaulted him. Earl contends that his right to present such evidence is grounded in the Confrontation and Compulsory Process Clauses of article I, § 11, of the Nebraska Constitution and the Sixth Amendment to the U.S. Constitution.

Article I, § 11, provides:

> In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation, and to have a copy thereof; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

Nebraska's rape shield law provides, in pertinent part, as follows:

> Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evi-

dence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

§ 28-321(2).

Under this statute, evidence of a complainant's prior sexual behavior is inadmissible unless it tends to prove one of the two explicitly stated exceptions; i.e., source of physical evidence, or consent. The legislative purpose and history of the rape shield law is amply discussed in *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), and *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). Stated briefly, the statutory purpose was to protect sexual assault victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. See *id.*

Despite the virtue of the general rule that evidence of a victim's prior sexual behavior is inadmissible, Earl contends that in the circumstances of a particular case, evidence of a victim's prior sexual behavior may be so relevant and probative that the defendant's right to present it is constitutionally protected. Because we conclude that Earl's offer of proof did not adduce evidence of sufficient relevance, i.e., evidence establishing that N.E. had prior knowledge of the same kind of sexual activities of which the defendant is accused, we do not decide the constitutional question in the instant case.

Section 28-321 further provides:

(1) If the defendant intends to offer evidence of specific instances of the victim's past sexual behavior, notice of such intention shall be given to the prosecuting attorney and filed with the court not later than fifteen days before trial.

(2) Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, *to determine the rele-*

*vance of evidence* of the victim's or the defendant's past sexual behavior.

(Emphasis supplied.)

In the instant case, the police reports offered at both the § 28-321 hearing and the trial set forth that N.E.'s mother had discovered that N.E. and his cousin "were playing 'husband and wife' and pretending to have sex while they were totally nude" and that they took their clothes off and lay on each other. The mother also said that N.E.'s 5-year-old cousin had previously been sexually assaulted and had "taught [N.E.] all about sex" the previous summer. Based on the police reports, Earl wanted to "look into" N.E.'s sexual history at trial. Specifically, Earl's counsel stated that the proposed evidence would consist of "various witnesses in the case and perhaps the parents of the alleged victim and the two girls mentioned, two girls themselves, the alleged victim himself and anybody else involved in the police reports who have knowledge of this type of activity."

An offer of proof must demonstrate to the court that questions put to a witness call for competent evidence. Unless it does so without equivocation, it is not error for the court to overrule the offer. See *State v. Eggers*, 175 Neb. 79, 120 N.W.2d 541 (1963). Even assuming arguendo that some type of incidents occurred between N.E. and his 5- and 6-year-old female cousins, there can be no showing that N.E. had prior knowledge of having an adult male's penis stuck in his mouth, as N.E. claimed Earl had done to him. The trial court correctly found that neither of the statutory exceptions provided in § 28-321 was met. Furthermore, we determine that Earl did not offer evidence of N.E.'s prior sexual behavior that would be so relevant and probative that Earl's constitutional right to present it would be triggered.

Thus, we conclude that the trial court did not abuse its discretion in not allowing evidence of N.E.'s past sexual behavior with other children at trial and in refusing Earl's offer of proof at trial.

### SUFFICIENCY OF EVIDENCE

Earl next asserts that the evidence adduced at trial was insufficient to support the conviction.

A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such a verdict is supported by relevant evidence. *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995).

Section 28-319 provides that

> [a]ny person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception, (b) knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree.

Neb. Rev. Stat. § 28-318(6) (Reissue 1989) defines "sexual penetration" to include fellatio.

The evidence adduced at trial included N.E.'s testimony that Earl fondled N.E.'s penis, fellated N.E., and forced N.E. to fellate Earl. Earl argues that the State never established that N.E.'s use of the word "wiener" meant sex organ or intimate part as defined by statute. We categorically reject this argument. As in the past, we decline to require that a victim, especially a youthful victim, testify about a sex act in vocabulary used by a physician or provide a detailed description which might otherwise be found in some sordid novel. See *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987). Earl also contends that N.E.'s testimony was so self-contradictory and doubtful as to make it insufficient to support a conviction as a matter of law. The record does not support this contention. We have often held that, in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. See, *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996); *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996). N.E.'s testimony, viewed in the light most favorable to the State, clearly supports the finding that Earl subjected N.E. to sexual penetration, in violation of § 28-319. Accordingly, we conclude that this assigned error is without merit.

## EXCESSIVENESS OF SENTENCE

Finally, Earl asserts that the sentence imposed by the district court is excessive.

Earl was convicted of first degree sexual assault, in violation of § 28-319(1)(a) and (b), a Class II felony. Neb. Rev. Stat. § 28-105 (Reissue 1989) provides that a Class II felony is punishable by a maximum of 50 years' imprisonment and a minimum of 1 year's imprisonment. The district court's sentence in the instant case of not less than 10 nor more than 12 years' imprisonment was well within the range of possible penalties for a Class II felony.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997); *State v. Kennedy*, 251 Neb. 337, 557 N.W.2d 33 (1996). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Cook, supra; State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996). We have reviewed Earl's personal and criminal history and have taken into consideration the debilitating effect of this crime on the victim. Earl was sentenced within the statutory limit, and the record reveals no abuse of discretion.

## CONCLUSION

Consequently, as noted above, the judgment of the district court is affirmed.

AFFIRMED.