THE STATE OF NEBRASKA, APPELLEE,
V. JEREMY WHITE, APPELLANT.
590 N.W.2d 863

Filed March 26, 1999.   No. S-98-560.

James H. Cain for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Jeremy White appeals the sentence imposed upon him as a result of his conviction for sexual assault of a child, a Class IV felony. We affirm.

## STATEMENT OF FACTS

The crime which gave rise to the instant case occurred on or about January 6, 1997. White was then 19 years old. He was married and lived with his 24-year-old wife in an apartment in Auburn, Nebraska. He was not employed.

White and his wife had allowed their friend Catherine G. and Catherine's 11-year-old daughter, S.G., to stay with the Whites in the apartment. Catherine was experiencing financial difficulties, and she believed that if she asked her ex-husband, S.G.'s father, for financial assistance, she would lose custody of S.G. At the time of the events in question, Catherine and S.G. had been living with the Whites for approximately 3 months. Catherine and S.G. moved out of the Whites' apartment after an argument on or about January 6, 1997. After they moved, S.G. told Catherine and others that White had repeatedly sexually assaulted her.

S.G. told investigators that soon after she and her mother had moved into the Whites' apartment in October 1996, White began to sexually assault her in the basement of the apartment building. S.G. reported that at first, White pushed her up against a wall and fondled her breasts and buttocks. As the assaults continued, White penetrated S.G.'s vagina digitally and with his penis while forcibly holding S.G. against a basement wall. S.G. told the investigators that these assaults caused her to bleed vaginally and that after each assault, S.G. had to change her panties so that her mother would not see the bloody discharge.

S.G. told the investigators that White sexually assaulted her 15 to 20 times from October 1996 through January 6, 1997, when the last assault occurred. S.G. stated that she did not tell her mother about the assaults because S.G. feared White would kill her if she did so.

Based on S.G.'s allegations, an arrest warrant for first degree sexual assault was issued for White. Police officers arrested White at his apartment without incident at approximately 1 p.m. on January 9, 1997. The officers did not immediately tell White the basis for the arrest warrant, but White volunteered that he knew his arrest involved S.G. and that "I knew this was going to happen." By the time they arrived at police headquarters, White was agitated and attempted to slam his head against the building's brick wall. The officers restrained him and seated White in the police station. As they did so, White again stated that he knew that this would happen and that "that little bitch is fucking lying." The officers advised White not to say anything further until they advised him of his *Miranda* rights.

The officers read White his rights. White indicated verbally and in a written acknowledgment that he wanted to make a statement without the assistance of counsel. White denied that he had any sexual contact with S.G., and he expressed anger about allowing S.G. and Catherine to live at the Whites' apartment. White called S.G. and Catherine "pigs" who wore "see-through nightgowns." White claimed that the argument which led to Catherine and S.G.'s moving out of the apartment was a result of their refusal to share in household tasks. After White gave his statement, police took him to a jail cell.

At about the same time, White's wife arrived at the police station. Officers informed her of the reason for White's arrest, and White's wife told the officers that she thought White might have had sexual contact with S.G., although S.G. had denied it when White's wife had earlier questioned her about it. White's wife stated that she had observed White frequently "wrestle" with S.G. and that White had commented that S.G. had "a nice ass and nice legs." White's wife stated that White thought about sex constantly and that "if I don't give it to him every night he beats the shit out of me." She also stated that White had medication to control his violent tendencies. White's wife gave the officers consent to search the Whites' apartment without a warrant.

The officers returned to White's cell and recounted the information provided by White's wife. White said he wanted to talk to his wife and then he would give the police another statement. White was allowed to call his wife on the telephone. Meanwhile, law enforcement officers searched the basement of the Whites' apartment building but found nothing relating to a sexual assault or a sexual contact between White and S.G. At approximately 7:45 p.m., White's wife called the investigating officers. Sobbing, she told them that White had called her and confessed to having sexual contact with S.G.

At 9:50 p.m., White indicated to the officers that he was willing to give the police another statement. He was reminded of his *Miranda* rights but again elected to give a statement without consulting counsel. White admitted that on the morning of January 6, 1997, he had sexual contact with S.G. in the basement of the apartment building. He claimed that S.G. initiated the contact by kissing him and rubbing his penis. White admit-

ted that he removed his pants and began to have intercourse with S.G., but he claimed he soon recognized that the encounter was wrong and he pushed S.G. aside and returned to his apartment. White agreed to write a statement regarding these events, and he began working on it at about 9:55 p.m. At about 11:30 p.m., after speaking with another investigator, White admitted that he had had at least two other incidents of sexual contact with S.G.

White was initially charged with one count of first degree sexual assault, a Class II felony. Pursuant to a plea agreement, White was charged with one count of sexual assault of a child, a Class IV felony in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1995). White pled guilty to one count of sexual assault of a child, and the trial court sentenced him to a determinate term of 5 years' imprisonment. In an unpublished opinion, *State v. White*, 97 NCA No. 47, case No. A-97-474 (not designated for permanent publication), the Nebraska Court of Appeals reversed White's conviction on direct appeal based upon error in the trial court's acceptance of White's guilty plea.

Upon remand to the trial court, on April 20, 1998, White entered a guilty plea to a single count of sexual assault of a child, a Class IV felony. Before accepting White's plea and adjudging him guilty of the crime with which he was charged, the trial court properly ascertained that White's plea was knowingly and voluntarily entered. The trial court then ordered that the presentence report prepared for White's first sentencing hearing be updated.

White appeared with counsel in the trial court on May 4, 1998, for resentencing. After the hearing began, the trial court took a recess so that White and his counsel could review the presentence report, including the amendments thereto. Upon resumption of the proceedings, White and his counsel agreed that the presentence report was accurate and complete. To the extent that information from this presentence report is necessary to our analysis, it is set forth below.

At the time of the resentencing hearing on May 4, 1998, White had served approximately 1 year of the 5-year term of incarceration to which he was originally sentenced. White's counsel stated that White had received counseling while in

prison, that he could obtain gainful employment if sentenced to a term of less than 5 years' imprisonment, and that White wanted to resume family life with his wife. White also appealed for a lesser sentence based upon his age, which was 19 at the time he committed the crime. White's counsel noted that S.G. now lived with her father in Missouri and that the likelihood of an encounter between White and S.G. was remote.

The trial court was unpersuaded by White's request for a punishment less than the 5-year sentence which the court had originally imposed upon White. The trial court sentenced White to a determinate term of 5 years' imprisonment, with credit given for time which White had already served. The trial court advised White that as a result of recent amendments in sentencing laws, White was considered eligible for parole immediately because there was no statutorily mandated minimum punishment for Class IV felonies. The trial court also advised White of the maximum amount of time he could be incarcerated before attaining his mandatory discharge, as well as the length of time White would actually be incarcerated if he qualified for all of the "positive time" allowed by Nebraska statutes. The trial court immediately remanded White to the custody of the sheriff to resume serving his sentence of imprisonment.

White appeals.

## ASSIGNMENT OF ERROR

White claims that his sentence is excessive and that the trial court abused its discretion in sentencing him to 5 years' imprisonment.

## STANDARD OF REVIEW

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Urbano, ante* p. 194, 589 N.W.2d 144 (1999); *State v. Strohl,* 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Hill,* 255 Neb. 173, 583 N.W.2d 20 (1998); *State v. Pattno,* 254 Neb. 733, 579 N.W.2d 503 (1998). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hill, supra.*

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Urbano, supra; State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

## ANALYSIS

All crimes in Nebraska are statutory in nature. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). Sentences imposed upon persons convicted of a crime are also statutory. *Pattno, supra.* A criminal sentence is not considered a final judgment until the entry of a final mandate from an appellate court, if an appeal has been taken. *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997); *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995). Penal statutes are strictly construed. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

We first consider the classification of the offense for which White stands convicted. White was convicted in the trial court of the crime of sexual assault of a child, which, at the time of its commission, was a Class IV felony for the first offense. Repeated convictions for this crime increased from Class IV to Class III felony status. See § 28-320.01(2).

Operative July 1, 1998, during the pendency of White's appeal, first offense sexual assault of a child was reclassified as a Class IIIA felony and repeated convictions of this offense were reclassified as Class IC felonies by virtue of legislative amendments to § 28-320.01. See 1997 Neb. Laws, L.B. 364. The Class IV felony crimes reclassified as Class IIIA felonies generally involved greater violence, in particular, violence committed against other persons. *Id.*

The reclassification of the crime of which White was convicted obviously increases the severity of the classification. It also increases the potential punishment. The present maximum penalty for both Class IIIA and Class IV felonies is 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 1998). The minimum portion of a Class IIIA felony indeterminate sentence is unrestricted. That is, there is no upper limit on the minimum term of a Class IIIA felony indeterminate sentence. However, the maximum minimum term

of a Class IV felony indeterminate sentence cannot now exceed one-third of the maximum sentence allowed by law, i.e., the maximum minimum term cannot exceed 20 months' incarceration. *State v. Urbano, supra*; Neb. Rev. Stat. §§ 29-2204 and 83-1,105.01 (Cum. Supp. 1998). For the sake of completeness, we note that during the period of July 1 to 14, 1998, while this appeal was pending, a Class IV felony sentence was subject to a mandatory minimum term of 6 months' imprisonment. See, 1997 Neb. Laws, L.B. 364; 1998 Neb. Laws, L.B. 1266.

The statutory reclassification of White's crime by virtue of the 1997 amendment to § 28-320.01 did not become operative until after every material stage of the judicial process in the trial of this case had been completed. The amendment to § 28-320.01 reclassifies the crime of which White was convicted as more severe and creates a potentially harsher minimum punishment than that which is permitted for Class IV felonies. Applying legislative amendments which disadvantage a defendant by creating or enhancing penalties which did not exist when the offense was committed is an unconstitutional ex post facto application of the new law which this court will not allow. *State v. Urbano, ante* p. 194, 589 N.W.2d 144 (1999). Therefore, as we analyze White's excessive sentence claim, we do not reclassify his crime as a Class IIIA felony, but, rather, construe his conviction as a Class IV felony, and we examine his sentence within the applicable statutory framework for Class IV felonies.

White was sentenced to a term of 5 years' imprisonment. White's sentence obviously exceeds the 0-year minimum punishment for Class IV felonies and does not exceed the 5-year maximum term permitted by statute. The sentence is, on its face, within the lawful statutory range of penalties permitted for Class IV felonies.

White claims on appeal that the 5-year sentence imposed upon him is excessive and must be reduced due to the 1997 and 1998 amendments to § 29-2204 and the 1997 amendment to § 83-1,105.01, which amendments impose, inter alia, the condition that the minimum term of a Class IV felony indeterminate sentence should not exceed one-third of the maximum term. Because White's sentence was determinate, White's claim,

based on the statutory revisions relevant to Class IV indeterminate sentences, is without merit.

By their terms, §§ 29-2204 and 83-1,105.01 govern indeterminate sentences, and they are, therefore, inapplicable to White's determinate sentence. In reaching this conclusion, we are guided by the principle that statutory language is to be given its plain and ordinary meaning. *Neb. Account. & Disc. v. Citizens for Resp. Judges, ante* p. 95, 588 N.W.2d 807 (1999).

In the instant case, the trial court articulated a single term of years as White's sentence. This was a determinate sentence. We observe that in contrast, when imposing an indeterminate sentence, a sentencing court ordinarily articulates either a minimum term and maximum term or a range of time for which a defendant is to be incarcerated. *State v. Urbano, supra.* Because White's sentence was determinate, the sentencing provisions in §§ 29-2204 and 83-1,105.01 regarding maximum minimum terms for indeterminate sentences are inapplicable to White.

A criminal sentence is not considered a final judgment until entry of a final mandate from an appellate court, if an appeal is taken. *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997). Thus, although White's sentence is not affected by statutory amendments relevant to Class IV felony indeterminate sentences, we, nevertheless, must evaluate the effect, if any, of recent amendments to the sentencing statutes as they may pertain to White's determinate sentence at the time of the resolution of White's case on appeal.

Sections 29-2204 and 83-1,105.01 have consistently provided that a trial court may impose a determinate sentence upon a criminal defendant. Following legislative enactments in 1997 and 1998, §§ 29-2204 and 83-1,105.01 both presently provide in substance that a sentencing court may "[i]mpose a definite term of years, in which event the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum sentence provided by law." Thus, because there is no statutorily mandated minimum punishment for a Class IV felony, the minimum term of a Class IV felony determinate sentence such as that which White received is the minimum provided by law, which is 0 year's imprisonment. Applying the current terms of §§ 29-2204 and 83-1,105.01, the

determinate sentence of 5 years' imprisonment imposed upon White is effectively a sentence with a maximum term of 5 years' imprisonment and by operation of law, a minimum term of 0 year's imprisonment.

We note that the terms of §§ 29-2204 and 83-1,105.01 governing determinate sentences as currently amended are substantially similar to the terms of Neb. Rev. Stat. § 83-1,105 (Reissue 1987) as that section existed prior to its 1993 repeal. In interpreting those terms, this court held that the minimum term of a determinate sentence was considered to be the minimum term provided by law and that thus, for a crime such as a Class IV felony which had no statutorily mandated minimum punishment, the minimum term of a determinate sentence is considered to be 0 year's imprisonment. *State v. Blazek,* 199 Neb. 466, 259 N.W.2d 914 (1977); *State v. Hedglin,* 192 Neb. 545, 222 N.W.2d 829 (1974).

Although the Legislature has indicated an intention by statutory reclassification to treat certain formerly Class IV felony behavior more severely for both classification and sentencing purposes, application of ex post facto principles prevent this court from punishing White more severely than the law allowed at the time the crime was committed. With respect to the minimum sentence applicable to a Class IV felony, the Legislature by statute provided for 0 year's imprisonment as a minimum when the crime in this case was committed, required a 6 months' mandatory minimum sentence from July 1 to 14, 1998, and reverted to 0 year's imprisonment as a minimum sentence on July 15, 1998. After July 15, 1998, the Legislature did not change the effect of a determinate Class IV felony sentence, which sentence shall be the term imposed by the court as a maximum term with a minimum term as provided by law, which in the case of Class IV felonies is 0 year's imprisonment. The Legislature is presumed to know the law, including the law surrounding determinate sentences, when passing new legislation. *SID No. 1 v. Nebraska Pub. Power Dist.,* 253 Neb. 917, 573 N.W.2d 460 (1998). See, also, *State v. White,* 254 Neb. 566, 577 N.W.2d 741 (1998). With respect to indeterminate Class IV felony sentences, after July 15, 1998, the Legislature has provided that the maximum minimum limit shall not exceed 20

months' imprisonment. By its legislation, the Legislature has signaled that Class IV felony behavior which has not been reclassified as a Class IIIA felony crime should be treated prospectively with more leniency with respect to the maximum minimum portion of an indeterminate sentence than prospective Class IIIA felonies for which there is no maximum minimum limit in an indeterminate sentence. Although we recognize that the act White committed would be a Class IIIA felony had it been committed on or after July 1, 1998, because such act was a Class IV felony at the time it was committed on January 6, 1997, White is treated on appeal as a defendant who has committed a Class IV felony.

At White's resentencing hearing, the trial court correctly advised White that as a result of the determinate 5-year sentence of imprisonment which it was imposing upon him, the maximum term was 5 years' imprisonment and the minimum term of the sentence was considered to be 0 year's imprisonment, since there was no statutorily mandated minimum punishment for a Class IV felony. The trial court also correctly followed § 29-2204 by advising White on the record that since there was no minimum punishment for a Class IV felony, he was immediately eligible to be considered for parole. The trial court also advised White of the amount of time he had to serve on his maximum term before attaining mandatory release, assuming White did not lose any "good time" for which he was eligible. See § 29-2204(1)(b) and (c). We conclude, therefore, that the sentence imposed by the trial court was within statutory limits, the associated explanation of the effect of the sentence was accurate, and the resolution of White's appeal after the operative dates of recent amendments to §§ 28-105, 29-2204, and 83-1,105.01 does not alter the sentence imposed upon White by the trial court. White received a determinate sentence of 5 years' imprisonment for his Class IV felony conviction, and pursuant to §§ 28-105, 29-2204, and 83-1,105.01, the minimum portion of his sentence is deemed to be 0 year's imprisonment.

Finally, we consider White's argument that we should reduce his sentence pursuant to this court's authority to modify criminal sentences on appeal. See Neb. Rev. Stat. § 29-2308 (Reissue 1995). We decline to do so.

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Urbano, ante* p. 194, 589 N.W.2d 144 (1999); *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

It is undisputed that White admitted to the officers that on multiple occasions he had sexual contact with S.G., an 11-year-old girl, and that the facts of these incidents amounted to the crime of sexual assault of a child. White claims on appeal, however, that his sentence should be reduced because S.G. was not "physically injured" and she "did not suffer any mental anguish." Brief for appellant at 5.

We reject White's assertions which trivialize the crime and its effect upon the child he assaulted. In affirming a sexual assault of a child conviction, we have previously rejected similar arguments and observed, "To claim, as [appellant] does, that this crime was 'not of a violent nature' is to ignore reality . . . ." *State v. Stephens*, 237 Neb. 551, 559-60, 466 N.W.2d 781, 787-88 (1991). White's sexual assault of S.G. for which he stands convicted was an act of violence, the nature of which the trial court obviously considered in imposing sentence upon White. In the instant case, the trial judge commented that upon resentencing, he could not justify a lesser sentence than 5 years' incarceration.

We have noted that a trial court has the opportunity to observe a defendant throughout the judicial process and is in a better position than this court to determine the most appropriate sentence, including, inter alia, whether the defendant is suited for probation. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances of the defendant's life. *Id.*

A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in mat-

ters submitted for disposition. *Id.* See, also, *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998); *State v. Chojolan, supra.*

The sentence imposed upon White is not excessive, and the trial court did not abuse its discretion by imposing upon White a determinate sentence of 5 years' incarceration.

## CONCLUSION

White's sentence of 5 years' incarceration based upon his conviction of the Class IV felony crime of sexual assault of a child is not excessive. As a result of recent statutory sentencing amendments, the determinate sentence of 5 years' incarceration imposed upon White amounts to a sentence with a maximum term of 5 years' imprisonment and, by operation of law, a minimum term of 0 year's imprisonment. The trial court did not err in imposing a 5-year term of imprisonment, and, accordingly, we affirm.

AFFIRMED.