STATE OF NEBRASKA, APPELLEE, V.
HARVEY A. HOBBY, APPELLANT.
607 N.W. 2d 869

Filed March 28, 2000.    No. A-99-399.

Stephanie L. Clark, Gage County Deputy Public Defender, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson, for appellee.

HANNON and SIEVERS, Judges, and BLUE, District Judge, Retired.

SIEVERS, Judge.

The defendant, Harvey A. Hobby, was charged on November 30, 1998, with one count of sexual assault of a child under Neb. Rev. Stat. § 28-320.01 (Reissue 1995), a Class IV felony, and one count of first degree sexual assault under Neb. Rev. Stat. § 28-319 (Reissue 1995), a Class II felony. The charges specified, on count I, that Hobby, being 34 years of age, had subjected a minor female to sexual contact on or about June 18, 1998, and, on count II, had subjected another minor female to sexual penetration on the same date. After a jury trial in February 1999 in the Gage County District Court, Hobby was convicted of both counts and sentenced to 3 to 4 years' imprisonment on count I and 12 to 16 years' imprisonment on count II, with sentences to run consecutively. Hobby now appeals to this court.

## BACKGROUND

On June 17, 1998, J.M. and D.M. were spending the night together while babysitting several younger siblings at D.M.'s

residence in Gage County, Nebraska. At the time, both J.M. and D.M. were 14 years of age. During that evening, Hobby came to the residence to see D.M.'s mother. When Hobby learned that D.M.'s mother was not home, he indicated he would return later.

Hobby returned later that night after the children had fallen asleep. J.M. stated that she woke in the middle of the night when she felt someone touching her breast and attempting to get into bed with her. When J.M. asked who was in her bed, the person responded by saying, " 'Harvey.' " J.M. identified Hobby as the man who had fondled her. J.M. "scooted off the bottom of the bed" saying that she needed to use the bathroom. J.M. then went into the living room and sat in a chair. Hobby followed J.M. into the living room and asked her where he could find D.M. When Hobby left the room, J.M. awakened two of the children she and D.M. had been babysitting and went to the home of a neighbor.

D.M. stated that she woke up when she felt someone penetrating her vagina with his finger. D.M. stated that her shorts and underwear had been pulled down to her knees and that her shirt and bra had been pulled above her breast. She stated that she started pushing the man off of her and that he rolled off onto the floor. She then pulled herself into the corner of her bed, which was next to the wall in the corner of the room. D.M. identified Hobby as the man who had assaulted her.

The neighbor stated that J.M. and two younger girls came to her door looking for help because a man was in D.M.'s house. She indicated that the girls were frightened. The neighbor then drove to D.M.'s residence and found D.M. crying and "curled up in a ball" in a chair in the living room. The neighbor then took D.M. and the remaining children to her home and notified the authorities. Gage County Deputy Sheriff Kent Harlan responded to the call and spoke with both J.M. and D.M. after he arrived.

## ASSIGNMENTS OF ERROR

Hobby alleges that the district court erred (1) in granting the State's motion in limine which prevented Hobby from testifying that he had originally gone to D.M.'s home to purchase marijuana from D.M.'s mother, (2) in overruling his objection to hearsay testimony offered at trial, and (3) in imposing excessive sentences.

## STANDARD OF REVIEW

In proceedings where Nebraska statutes involving the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999); *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999). The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Wells, supra*; *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Wells, supra*; *State v. White, supra*.

## ANALYSIS

### State's Motion in Limine.

Hobby first asserts the trial court erred when it sustained the State's motion in limine prohibiting Hobby from eliciting testimony which would indicate that he came to D.M.'s residence in order to purchase marijuana. "Evidence which is not relevant is not admissible." Neb. Rev. Stat. § 27-402 (Reissue 1995). See *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1995). The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998). A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

■ In *State v. Harrold*, 256 Neb. 829, 852, 593 N.W.2d 299, 316-17 (1999), the Supreme Court stated:

> Relevance is a relational concept and carries meaning only in context. A right to introduce evidence depends upon there being an issue of fact that is of consequence to the determination of an action. See § 27-401. First, evidence may be irrelevant if it is directed at a fact not properly an issue under the substantive law of the case. [Citation omitted.] Second, if the evidence fails to alter the probabilities of the existence or nonexistence of a fact in issue, the evidence is irrelevant.

Hobby argues that the trial court prohibited him from eliciting testimony that his purpose for being in D.M.'s home was to purchase marijuana. Hobby asserts that "this aspect of the case should have been introduced to the jury because it demonstrates that Mr. Hobby's reason for being present at [D.M.'s] residence had a purpose other than to have sexual contact with" the victims. Brief for appellant at 5.

With Hobby's intention in mind, we consider the elements the State must prove in order to convict Hobby of the crimes charged. In order to convict Hobby of sexual assault of a child, the State must show that Hobby subjected a person 14 years of age or younger to sexual contact and that Hobby was at least 19 years of age or older at the time. See § 28-320.01. On the count of first degree sexual assault, the State must show that Hobby subjected another person to sexual penetration without consent, or that Hobby was 19 years of age or older and his victim was under the age of 16. See § 28-319. Given the statutory elements of the State's case, Hobby's purpose for being in D.M.'s home has no bearing and thus no relevance to any of the elements of the crimes. Whether he was at the residence to deliver cookies or to buy drugs, the only question remains whether he committed the sexual assaults after he got there. Hobby's purpose for being in D.M.'s home fails to alter in any way the facts in issue—what he did after he got there. The excluded evidence was irrelevant, and the trial court properly sustained the motion in limine.

*Excited Utterance Hearsay Exception.*

Hobby next asserts that the trial court erred in overruling his objection on hearsay grounds to Harlan's testimony about what

J.M. and D.M. told him shortly after they were assaulted by Hobby. Harlan stated that the Gage County Sheriff's Department first received a burglary call at 2:44 a.m. on June 18, 1998, and that he arrived on the scene at 3:09 a.m. Harlan first spoke with the neighbor for approximately 5 minutes. Harlan then interviewed J.M. in his squad car for approximately 15 minutes. After interviewing J.M., he then interviewed D.M. Harlan estimated that he concluded talking to both victims within 45 minutes of the original call and that the entire evolution happened within 1 hour.

Harlan also stated that at the time he talked to J.M., "[s]he appeared to be fairly upset." When asked if she appeared to have been crying, Harlan stated that she had. She was not crying at the time she entered his squad car, but she did cry during the interview. Although J.M. appeared excited to Harlan, he agreed that J.M. did answer his questions coherently. The trial court overruled Hobby's hearsay objection and allowed Harlan to testify as to what J.M. told him had happened. Harlan stated that J.M. said she was sleeping and felt someone next to her with his hand under her shirt. He stated that J.M. said the man was kissing her neck and the side of her face and that when she asked who it was, the man said, " 'It's Harvey.' " Harlan then stated that J.M. told the man she had to use the bathroom and that "she crawled down to the foot of the bed, got off the bed and left the room." J.M. told Harlan that Hobby followed her into the living room. She then told Harlan that after Hobby left the room, she awakened two of the other children in the house and went to the neighbor's home.

The State next questioned Harlan concerning his conversation with D.M. Harlan said that D.M. appeared upset, nervous, withdrawn, and uncomfortable and that the things D.M. told him had happened recently. The trial court overruled Hobby's hearsay objection and allowed Harlan to testify as to what D.M. told him had happened. He stated the D.M. told him she was sleeping when she felt something in her vagina. When she woke, her shirt and bra were over her breast and her shorts and underwear were down to her knees. Harlan stated that D.M. said she pushed the man away and told him to leave her alone or she would scream. D.M. told Harlan that as the man left, she could see that it was

Hobby. D.M. told Harlan that she waited a few minutes and then went out into the living room where Hobby was still sitting in a chair. A short time later, Hobby left and the neighbor arrived.

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Neb. Rev. Stat. § 27-803(1) (Reissue 1995). For a statement to qualify as an excited utterance, the following criteria must be met: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994).

Here, the first two elements of the exception are met in that the victims experienced a startling event, being sexually assaulted as they slept, and their statements to Harlan related to the event. Thus, the issue is whether the statements were made while under the stress of the event.

For hearsay to be admissible under the excited utterance exception, "[s]tatements need not be made contemporaneously with the exciting cause but 'may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated.'" *State v. Jacob*, 242 Neb. 176, 188, 494 N.W.2d 109, 118 (1993) (quoting 6 John H. Wigmore, Evidence in Trials at Common Law § 1750 (James H. Chadbourn rev. 1976)). "[T]he key requirement is spontaneity, a showing that the statement was made without time for conscious reflection." *State v. Boppre*, 243 Neb. 908, 927, 503 N.W.2d 526, 538 (1993). However, the time interval between the startling event and the statements in question is not "of itself dispositive of the spontaneity issue." *Id*. The permissible length of time between the statement and the startling event is determined on the unique facts of each case. *Id.*; *State v. Jacob, supra.*

In *State v. Tlamka*, 244 Neb. 670, 677, 508 N.W.2d 846, 851 (1993), the Nebraska Supreme Court indicated:

As stated in *State v. Plant*, 236 Neb. 317, 329, 461 N.W.2d 253, 264 (1990): "While it is not necessary to show that the declarant was visibly excited in order to qualify under the excited utterance exception, [citations

omitted], a declarant's nervous state is relevant to the issue of whether the statement was made by the declarant while under the stress of the event." " ' "[T]he true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue . . . ." ' " *State v. Jacob*, 242 Neb. 176, 188, 494 N.W.2d 109, 118 (1993) (quoting 6 Wigmore, supra, § 1745).

Harlan arrived at the neighbor's home and interviewed both J.M. and D.M. within 1 hour of the assaults. Both J.M. and D.M. testified that they awakened to find themselves being assaulted by Hobby. Harlan stated that J.M. had been crying, appeared excited, and cried during the interview. He also stated that D.M. appeared upset, nervous, withdrawn, and uncomfortable and that the things D.M. told him had happened recently. Under the facts of this case, the trial court could readily conclude that J.M. and D.M. were speaking under the stress of nervous excitement and shock produced by the assaults perpetrated by Hobby. Accordingly, we conclude that the statements from J.M. and D.M. come within the "excited utterance" exception to the hearsay rule and that their admission was not error.

*Excessive Sentences.*

Hobby next asserts that the trial court erred in imposing excessive sentences. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Earl, supra*; *State v. Cook, supra.*

Count I, sexual assault of a child, see § 28-320.01, was a Class IV felony when the crime was committed, but has subsequently been reclassified as a Class IIIA felony by 1997 Neb. Laws, L.B. 364 § 6, operative July 1, 1998. A Class IIIA felony carries a penalty of a maximum of 5 years' imprisonment, with

no maximum minimum. Neb. Rev. Stat. § 28-105 (Cum. Supp. 1998). This reclassification increases the severity of the penalty, which cannot be constitutionally done, given the crime was committed before the effective date of the amendment and the judgment is not final pending appeal. See *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999). Thus, Hobby's crime of sexual assault of a child is properly treated as a Class IV felony. However, the district court imposed an improper sentence by imposing a sentence of 3 to 4 years' imprisonment. Because of a legislative amendment, fully discussed in *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999), the minimum portion of the sentence cannot exceed one-third of the maximum allowed by the legislative amendment to the sentencing statute. Thus, the low end of Hobby's sentence for the crime of sexual assault of a child cannot be more than 20 months' imprisonment. Thus, we affirm the sentence for the crime except that it shall be modified to 20 months' to 4 years' imprisonment. Due to the consecutive nature of the sentences for the two crimes, our modification will have little or no practical effect, but the sentences should be correct.

First degree sexual assault is a Class II felony punishable by a maximum term of 50 years' imprisonment and a mandatory minimum of 3 years' imprisonment. § 28-105 (Reissue 1995). The trial court sentenced Hobby to 12 to 16 years' imprisonment on count II. The sentence was within statutory limits, was not untenable, and did not deprive Hobby of a substantial right or a just result. Accordingly, Hobby's assertion that the trial court abused its discretion by imposing excessive sentences is without merit.

AFFIRMED AS MODIFIED.

HANNON, Judge, dissenting.

I must respectfully dissent, because I do not think Harlan's testimony relating the statements made to him by J.M. and D.M. qualifies as an exception to the hearsay rule, as an excited utterance under § 27-803(1). The victims' age, the absence of significant force by Hobby toward them, and the time that elapsed between the alleged crime and Harlan's interview of the victims are considerations which make an excited utterance improbable. Under such circumstances, Harlan's testimony that one of the

victims appeared to be fairly upset and the other excited is not sufficient in my opinion to show the statements were made under the stress of the alleged crime. Most importantly, the victims' statements to Harlan were made in answer to questions he put to them in an interview after they were in the company of the neighbor and after both victims had had time to reflect. Such statements cannot be said to be spontaneous as required by the authority quoted in the majority's opinion.