STATE OF NEBRASKA, APPELLEE,
v. MICHAEL E. JOHNSON, APPELLANT.
587 N.W. 2d 546

Filed December 31, 1998.    No. S-97-849.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Following a jury trial in the district court for Lancaster County, Michael E. Johnson was convicted of first degree sexual assault and use of a weapon to commit a felony. He was sentenced to consecutive sentences of 6 to 10 years' imprisonment on the sexual assault conviction and 3 to 5 years' imprisonment on the weapon conviction. The convictions and sentences were affirmed by the Nebraska Court of Appeals in a memorandum opinion filed on May 14, 1998, and the case is before us on Johnson's petition for further review. We conclude that prejudicial error occurred and therefore reverse, and remand for a new trial.

## FACTS

At approximately 11 p.m. on July 30, 1996, a woman whom we will refer to as "C." contacted the Lincoln Police Department and reported that she had been sexually assaulted at knifepoint in her apartment earlier that evening. She identified the assailant as "Mike," who worked at a Lincoln cafe. A neighbor told police that she had observed Johnson inside C.'s apartment approximately 5 minutes before observing C. run out of the apartment, crying and upset, stating that Johnson had sexually assaulted her. The neighbor directed police to Johnson's nearby home, where they took him into custody and placed him in a police vehicle. C.'s neighbor observed Johnson in the vehicle and identified him as the person she had seen in C.'s apartment earlier in the evening. During initial police questioning after being advised of his *Miranda* rights, Johnson denied being present in C.'s apartment or having any sexual contact with her on July 30. Police searched Johnson's home pursuant to a warrant and seized articles of clothing and two kitchen knives which matched the general description of the knife which C. reported that Johnson had used in the assault.

Johnson's counsel sent a letter to the State on or about February 13, 1997, with Johnson's knowledge and consent. The

letter stated that Johnson and C. were acquainted prior to the date of the alleged assault and that they had worked together for a short time at the cafe which Johnson managed. The letter stated that during this period, the two had consensual sexual relations. The letter also recited Johnson's version of the events of July 30, 1996, as related to his counsel. In that account, Johnson claimed that while visiting C. at her apartment on that evening, she told him that her lights had been shut off because she was unable to pay her electric bill. According to Johnson, C. offered sex in exchange for money to pay the electric bill, and Johnson agreed. After what Johnson described as consensual sexual intercourse, he told C. that he did not have the money she had requested but would give it to her at a later date. He contended that this caused her to become upset and report a sexual assault. Through his counsel, Johnson offered to take a polygraph examination to confirm the truthfulness of his version of what had occurred. The State declined his offer. The trial court sustained the State's motion in limine regarding Johnson's offer to take a polygraph examination and refused to permit Johnson to testify regarding the conversation with his counsel, which led to the writing of the aforementioned letter, on the proffered ground that it constituted a prior consistent statement. The court also granted the State's oral motion in limine, to which Johnson did not object, precluding questioning regarding whether C. had ever been incarcerated.

In the State's opening statement, it told the jury that the evidence would establish that C. was sexually assaulted by Johnson at knifepoint. Johnson told the jury that the evidence would establish that the two had consensual sexual intercourse and that C. became upset when Johnson subsequently told her that he did not have the money he had promised her.

During C.'s direct examination at trial, she testified that she became acquainted with Johnson when she briefly worked at a restaurant which he managed in May 1996. She testified that Johnson walked into her apartment without knocking at some time between 9 and 10 p.m. on July 30. She stated that after a conversation lasting approximately 10 minutes, she told Johnson she was going to bed and he left the apartment, but he returned about 10 minutes later with some cigarettes. C. testi-

fied that when she repeated that she was going to bed, Johnson threatened her with a knife he had pulled from his clothing, pushed her up the stairs of her apartment, and forced her to have sexual intercourse against her will. During the assault, C. heard her neighbor knocking on her door. According to C., after the alleged assault, Johnson threatened both her and her daughter and walked downstairs. After remaining upstairs for a period of time, C. went to the back door, asked her neighbor to retrieve her daughter, and reported the assault to the police.

During her direct examination, C. stated that the electrical service in her apartment had been turned off for approximately 1 week prior to July 30, 1996, because she had not paid a previous bill. However, she stated that she had planned to get the electricity turned back on at the first of the month. During cross-examination, C. testified that she was receiving state aid and was unemployed at the time of the assault, but she denied having financial problems. C. admitted that payment of the electric bill on the first of August would have left her with only $128 to live on during the month, but stated that her mother would have assisted her financially if requested and insisted that she was not experiencing financial problems as of July 30.

At this point, Johnson asked the court to reconsider its pre-trial ruling barring evidence of C.'s incarceration. In an offer of proof made out of the presence of the jury, Johnson questioned C. and established that from August 5 through 8, 1996, she served jail time in lieu of paying fines on traffic citations and that she had written a number of insufficient-fund checks between April and July 1996. The trial court sustained the State's objection in part, permitting Johnson to establish only that C. had unpaid fines as of July 30. When cross-examination of C. resumed, she acknowledged owing debts to the county court as of the date of the alleged assault but reiterated that she had no financial problems at that time.

An emergency room physician who examined C. soon after she reported the assault testified that he found no bruises, scratches, abrasions, or other evidence of trauma. He stated that the absence of such evidence could be consistent with either sexual assault or consensual sexual intercourse. A forensic serologist testified that on the basis of her analysis of tissue

samples, Johnson could not be excluded as the source of hair, blood, and semen collected from C.'s clothing and apartment.

Johnson testified on his own behalf as the last witness at trial. He stated that he met C. in 1995 through his female companion, who then worked with C. at a fast food restaurant. Later, C. moved to an apartment located approximately one block from Johnson's home. Johnson testified that in May 1996, he hired C. to work at the restaurant he managed, but she quit after working 2 or 3 weeks. Johnson stated that he visited C.'s apartment on several occasions prior to July 30 and that on one of those occasions, he had consensual sexual contact with C. after he offered her money.

Johnson testified that on the afternoon of July 30, 1996, he had been replacing window glass in a car, using tools which included pliers, a "door handle windshield clip remover," and a knife. Johnson stated that he had these tools with him when he went to C.'s apartment between 9:30 and 10 that evening. He testified that when he knocked on the door, C. let him in to the apartment and they had a brief conversation. He testified that he left briefly to purchase cigarettes at C.'s request. Johnson stated that when he returned to the apartment, he and C. smoked marijuana and talked for approximately 10 minutes. According to Johnson, C. told him that her electricity had been turned off because of her failure to pay a bill and asked for his financial help. Johnson said that he told C. he would give her money in exchange for sex and that she agreed. He further stated that after having consensual sexual intercourse with C., he told her that he did not have the money he had promised her but would give it to her when he got paid in 2 days. Upon hearing this, C. became upset and Johnson left her apartment and returned to his home, where he was later arrested. He testified that when initially questioned by police, he denied having sexual relations with C. because he did not want his companion to learn of what had occurred.

Prior to the closing argument and after the court had overruled Johnson's offer of the aforementioned letter written by his attorney to the State in February 1997, Johnson moved that the State be prohibited from arguing to the jury that Johnson changed his story after reading the reports in the case, after the

taking of the depositions, or after listening to the evidence. The State then stated that it thought Johnson's request "was fair." The court stated that when and how Johnson may have changed his story was not for the jury to know. The State appeared to agree with this, indicating that it would argue that Johnson had changed his story after his initial questioning by police "without suggesting a time frame."

During closing arguments, the State made the following statement:

> I also anticipate that [the defense] will argue to you that [Johnson]'s version in court is corroborated or substantiated by other evidence in this case, and to a large part, I think that is true. But gee, isn't it pretty easy when you have ten months in the luxury of sitting through all of the witnesses, to conform your story to what those people say? It's quite a luxury.

Johnson moved for a mistrial immediately following this statement on the ground that it violated the court's prior ruling. The trial court overruled both the motion and Johnson's subsequent request that the jury be instructed to disregard the statement. In the State's rebuttal argument, it stated: "There is no evidence that [C.] is a desperate woman. Her lights are out. She admits her lights are out. She has arrangements to have them back on two days after this would have happened. . . . She is not desperate for anything."

## ASSIGNMENTS OF ERROR

Johnson originally asserted six assignments of error, all of which the Court of Appeals resolved against him. In his petition for further review, Johnson contends that the Court of Appeals erred in concluding that the restrictions placed upon the cross-examination of C. did not violate his constitutional right to confrontation and in finding that the State's closing argument was not improper, prejudicial, and in violation of his constitutional rights.

## ANALYSIS

"Any person who subjects another person to sexual penetration . . . without consent of the victim . . . is guilty of sexual assault in the first degree." Neb. Rev. Stat. § 28-319(1) (Reissue

1995). Johnson admitted that he had sexual intercourse with C. on July 30, 1996, and his guilt or innocence therefore depended upon whether the State met its burden of proving that the act occurred without the consent of C. Other than Johnson and C., there were no witnesses to what occurred and no physical evidence of force. Their testimony as to whether the act was forced at knifepoint or consensual in exchange for a promise of money was in direct conflict, and each version was supported by at least some circumstantial evidence. Thus, the jury's determination rested upon whether it believed C.'s testimony or that of Johnson.

The issue before us is whether the order of the district court prohibiting Johnson from eliciting on cross-examination that C. had served jail time in lieu of paying court fines several days after the alleged assault and had written insufficient-fund checks during a 4-month period prior thereto violated Johnson's constitutional right of confrontation. The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th Amendment to the U.S. Constitution, as incorporated in the 14th Amendment, as well as by article I, § 11, of the Nebraska Constitution. See, *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); *State v. Hartmann*, 239 Neb. 300, 476 N.W.2d 209 (1991). The U.S. Supreme Court has held that a violation of this right occurs when a defendant in a criminal case is prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness. *Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

*Olden* involved a prosecution for rape and forcible sodomy in which the defendant contended that the sex acts were consensual. The alleged victim testified that the defendant raped her and then drove her to a location where she was released. Her testimony was corroborated by a male witness who testified that he observed the woman get out of the defendant's car and that

she immediately told him she had been raped. The woman testified at trial that she lived with her mother at the time of the assault. On cross-examination, the defendant sought to elicit the fact that the woman was living with and having an extramarital affair with the corroborating witness at the time of the alleged rape, arguing that this evidence established a motive on the part of the woman to lie about being raped. The trial court acknowledged the relevance but excluded the evidence on the ground that the relevance was outweighed by the potential for prejudice. The Supreme Court held that this ruling violated the defendant's right to confrontation, concluding: "It is plain to us that '[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.'" 488 U.S. at 232, quoting *Delaware v. Van Arsdall, supra.*

This court reached a similar conclusion in *State v. Thaden,* 210 Neb. 622, 316 N.W.2d 317 (1982), an appeal from a conviction for first degree sexual assault in which the central issue of whether the sex act was forced or consensual rested entirely on the credibility of the defendant and his alleged victim. The woman testified on direct examination that she moved from her residence on the day following the assault out of fear that the defendant would return. The district court precluded the defendant from eliciting on cross-examination that the woman had changed residences numerous times prior to the alleged assault. During closing argument, the prosecutor argued that the woman's leaving her residence was " 'corroboration for her side of the story' " and that the defendant had " 'been able to offer no explanation as to why she would suddenly move unexpectedly away like this. She moved because she had been raped, and she was afraid of him. . . .'" *Id.* at 626, 316 N.W.2d at 320.

We noted that the right of cross-examination " 'is implicit in the constitutional right of confrontation' " and " ' "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." ' " *Id.* at 627, 316 N.W.2d at 320, quoting *Chambers v. Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Further, we recognized that " '[t]he right of a defendant to engage in a searching and wide-

ranging cross-examination is an essential requirement for a fair trial.'" *State v. Thaden*, 210 Neb. at 627, 316 N.W.2d at 321, quoting *United States v. Jones*, 557 F.2d 1237 (8th Cir. 1977). We concluded that in view of the final argument made by the prosecuting attorney, "the restriction upon the defendant in his cross-examination of the prosecutrix was unreasonable, an abuse of discretion, and constituted prejudicial error." *Id.* at 628, 316 N.W.2d at 321.

*Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988), and *State v. Thaden, supra*, involved a total prohibition of the right to cross-examine on a specific subject. In the present case, Johnson's counsel was permitted to cross-examine generally on the issue of C.'s financial condition, but was restricted from specific inquiry regarding the fact that she wrote insufficient-fund checks and served jail time in lieu of paying traffic fines.

In *State v. Privat*, 251 Neb. 233, 248, 556 N.W.2d 29, 38 (1996), we held that

> an accused's constitutional right of confrontation is violated when *either* (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been permitted to pursue his or her proposed line of cross-examination.

(Emphasis supplied.)

In this case, the Court of Appeals reviewed the trial court's action to determine whether it had abused its discretion in excluding the evidence under Neb. Evid. R. 403, reasoning as follows:

> The question that must be asked here is the extent to which the fact that [C.] served three days in jail rather than pay fines proves that she was not truthful in her denial of financial desperation—beyond that already prove[d] by the evidence which was admitted about her financial condition. Accepting jail time, in lieu of paying a fine, obviously says something about [C.]'s financial condition because it would be highly extraordinary for a financially

sound man or woman to spend three days in jail in lieu of paying a traffic fine, particularly when it meant leaving behind a 2-year-old child. But, the probative value of such evidence as well as the need for it is diminished by other evidence in the record. Specifically, [C.] admitted the core of Johnson's premise of "financial desperation." She admitted that her electricity had been shut off for two weeks before July 30, that she was illuminating her house with candles and a kerosene lamp, that she was receiving state aid for herself and her baby, and that she was unemployed. She also admitted that if she had paid the $175 to turn her electricity back on, she would have had only $128 for herself and her baby to live on for the rest of August. Thus, while [C.] testified that she did not have "any financial problems," the jury did not need evidence that [C.] spent three days in jail sitting out traffic fines to conclude the argument that her financial situation was "desperate" was sound. Furthermore, the evidence that [C.] spent time in jail is prejudicial in two respects: (1) it portrays her in a negative light as someone who could not manage her own affairs, and (2) it bespeaks poorly as to her ability to raise her child. Finally, it is after-the-fact evidence, as she started serving the time in August of 1996.

The Court of Appeals thus concluded that while the fact that C. served jail time in lieu of paying traffic fines was "somewhat probative" of her financial condition, it was not essential because there was "more than ample evidence in the record to allow the jury to reach the rather obvious conclusion that her denial of financial problems was either groundless or a monumental denial of reality." Similarly, the court held that although evidence of C.'s writing insufficient-fund checks during a 4-month period prior to the alleged assault said "something about her financial condition or at least her money management skills" and that it "probably should have been admitted," its exclusion was harmless error because "[t]here was ample evidence in the record for defense counsel to argue that [C.]'s financial condition was 'desperate,' 'poor,' 'unstable,' or virtually any other adjective he wanted to use."

In the instant case, the Court of Appeals did not apply the test in *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996), or otherwise discuss the issue of whether the restrictions on cross-examination impinged upon Johnson's right to confrontation. We conclude that the second prong of the *Privat* test is applicable and leads to the conclusion that Johnson was denied the right to effectively cross-examine C. regarding her financial condition at the time of the alleged assault. Although C. testified that she had a limited income and unpaid bills, she specifically denied that she had "financial problems" and stated that her mother would have assisted her financially, if requested to do so.

By arguing that "there is no evidence that [C.] is a desperate woman" and that she could have made arrangements to restore electricity in her home within 2 days after the alleged assault, the State was clearly asking the jury to draw an inference that C. would never have agreed to have sex with Johnson in exchange for money, as he contended. It would have been considerably more difficult for the jury to draw this inference if it had known that C. had been writing insufficient-fund checks for months prior to the alleged assault and that within a few days thereafter, she served jail time in lieu of paying traffic fines. While the Court of Appeals correctly notes that there is other evidence which calls into question C.'s denial that she was in a desperate financial condition, none of it is as persuasive as the evidence which the trial court excluded. For example, C.'s testimony that she could have obtained financial help from her mother to meet her August 1996 expenses is seriously undermined by the fact that she served jail time in lieu of paying traffic fines during that month. Thus, we conclude that the exclusion of this evidence violated Johnson's right of confrontation because a reasonable jury would have received a significantly different impression of C.'s credibility had Johnson been permitted to pursue the proposed line of cross-examination.

The denial of a defendant's right of confrontation is subject to harmless error analysis. *Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State*

*v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Buechler*, 253 Neb. 727, 572 N.W.2d 65 (1998); *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997). An erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that error was harmless beyond a reasonable doubt. *State v. Buechler, supra.* Even a constitutional error which was harmless beyond a reasonable doubt does not warrant the reversal of a criminal conviction. *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996); *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996), *overruled on other grounds, State v. Burlison, ante* p. 190, 583 N.W.2d 31 (1998).

As we have noted previously, the outcome in this case depended almost entirely upon whether the jury believed C.'s testimony that Johnson forcefully assaulted her, or Johnson's testimony that C. consented to sex in exchange for money. We agree with the Court of Appeals' statement that the properly admitted evidence did not overwhelmingly establish Johnson's guilt. Accordingly, we cannot say that the error we have noted was harmless beyond a reasonable doubt. The trial court's refusal to permit Johnson to cross-examine C. on the issues of insufficient-fund checks and serving jail time in lieu of paying traffic fines constituted reversible error that entitles Johnson to a new trial. Accordingly, we do not reach the other issue raised by Johnson in his petition for further review.

REVERSED AND REMANDED FOR A NEW TRIAL.