STATE OF NEBRASKA, APPELLEE, V.
RICHARD E. LESSLEY, APPELLANT.

601 N.W. 2d 521

Filed October 15, 1999.    No. S-98-1004.

Thomas C. Riley, Douglas County Public Defender, and Timothy F. Shanahan for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Richard E. Lessley appeals his conviction for first degree sexual assault. Lessley challenges an evidentiary ruling which excluded him from presenting evidence of the victim's sexual past, and he challenges his sentence as being excessive. On our own motion, we removed this matter to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We reverse the judgment and remand the cause for a new trial.

## BACKGROUND

Lessley was charged with first degree sexual assault as a result of an allegation by Lessley's coworker, M.B., that Lessley subjected her to anal intercourse, without her consent, on November 23, 1997. Lessley admitted to having sex with M.B., but alleged it was consensual.

Prior to trial, Lessley motioned to present evidence of M.B.'s past sexual conduct. The trial court overruled the motion. Lessley made an offer of proof that Joseph Eck, a coworker of M.B.'s and Lessley's, would testify M.B. told Eck that she has anal intercourse with males and does so to avoid becoming pregnant.

At trial, M.B. testified that on November 23, 1997, she was employed by Wells Fargo Guard Service as a security guard and was working the 8 a.m. to 4 p.m. shift at First National Bank in Omaha, Nebraska. M.B. testified that she had been a security guard at this location for about 3 weeks. At about 3:25 p.m., M.B. was on the ninth floor of the bank building and received a radio call to come down to the first floor. M.B. went to the first floor, where Lessley asked her to take him to the ninth floor because he wanted to watch a football game before his 4 p.m. shift as a security guard began. The ninth floor could be accessed only by the use of a keycard, which M.B. had because she was still on duty and Lessley did not have because he was not yet on duty. M.B. took Lessley to the ninth floor, where they watched a football game on television. Approximately 10

minutes later, Lessley wanted to go up to the 13th floor, which also could be accessed only by a keycard. M.B. and Lessley took the elevator to the 13th floor, and M.B. used the keycard to gain access to the floor. Lessley then led M.B. into one of the offices located on that floor. M.B. went over to a window and was looking out when Lessley approached her from behind and subjected her to anal intercourse without her consent.

During the State's opening statement, the State informed the jury that M.B. is a lesbian. M.B. was asked on direct examination whether she had gotten comfortable enough with her coworkers that she would discuss intimate personal matters with them, such as sex or sexual preferences. M.B. responded that she would never talk about any of her sexual ideas or sexual preferences with her coworkers. This exchange then followed:

Q: Did they know you were a lesbian?
A: Not that I know of.
Q: Is it possible they could have known you were gay?
A: It's a possibility.
Q: You are a practicing lesbian?
A: I am a practicing lesbian.
Q: That's your lifestyle, right?
A: Yes, it is.

M.B. further testified on direct examination that the wind was knocked out of her during the encounter and that she had "never, ever engaged in anything like that." In addition, M.B. was asked if she recalled whether Lessley ejaculated during the incident, and she responded, "I would not know, sir, due to the fact I'm a lesbian and we don't do that."

On cross-examination of M.B., defense counsel asked M.B. if it was true that she told Eck she has anal intercourse with men. M.B. responded, "I do not." Defense counsel then asked, "[t]hat you do so so that you don't get pregnant?" and M.B. responded, "I did not say that." The State did not object to such questioning.

At the end of the State's case in chief, Lessley renewed his motion to present evidence of M.B.'s past sexual conduct, arguing that M.B.'s testimony that she is a lesbian shows a greater likelihood that the incident at issue was not consensual and that Lessley should be allowed to confront his accuser. Lessley also argued that because M.B. denied making any statements about

prior anal intercourse with males, he should be allowed to impeach her on that statement. The trial court overruled the motion, finding that evidence of M.B.'s past sexual behavior is immaterial and irrelevant and barred by the rape shield law, Neb. Rev. Stat. § 28-321 (Reissue 1995).

During the defense's case in chief, Lessley again made an offer of proof that Eck would testify that M.B. told him she has anal intercourse with males and that she does so to avoid becoming pregnant. Lessley argued that he should be allowed to present this testimony due to the facts that M.B. testified she is a lesbian and that she denied making the statement to Eck about having anal intercourse with males. The trial court renewed its finding excluding any evidence of M.B.'s past sexual behavior. At the completion of Lessley's evidence, Lessley again renewed the motion to present evidence of M.B.'s past sexual behavior. The trial court again overruled the motion. After the State informed the trial court that it did not have any rebuttal evidence to offer, Lessley again renewed the motion, and it was again overruled.

After a jury instruction conference, Lessley once again renewed the motion to present evidence of past sexual behavior and again made an offer of proof in support of the motion, which was overruled.

A jury found Lessley guilty of first degree sexual assault. After a presentence investigation, Lessley was sentenced to 7 to 10 years' incarceration, with credit for 270 days previously served.

## STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Sanchez, ante* p. 291, 597 N.W.2d 361 (1999). Where, as here, the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *Id.*

## ASSIGNMENTS OF ERROR

Lessley assigns that (1) the trial court erred in overruling his motion to present evidence of the victim's past sexual behavior and (2) the sentence imposed by the trial court was excessive.

## ANALYSIS

Nebraska's rape shield law, § 28-321(2), provides in part that evidence of a sexual assault victim's past sexual behavior shall not be admissible unless such evidence is:

(a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

Stated briefly, the statutory purpose was to protect rape victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). Under the rape shield law, evidence of a complainant's prior sexual behavior is inadmissible unless it tends to prove one of the two explicitly stated exceptions, i.e., source of physical evidence or consent. *State v. Sanchez, supra*; *State v. Earl, supra.*

It is clear that the evidence Lessley sought to present at trial does not fit within either of the two exceptions found in the statute. Although the proffered evidence did relate to past sexual behavior with persons other than Lessley, it was not offered to prove the source of any physical evidence. The second exception under the rape shield law deals with evidence of past sexual behavior with Lessley. This exception does not apply to the

proffered testimony of Eck. Lessley does not argue that the evidence fits within one of these exceptions, but, rather, contends that the evidence is admissible because its exclusion would violate his right to confrontation under the Sixth Amendment to the U.S. Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

Lessley argues that M.B.'s past sexual history was not an issue raised by him, but, rather, the State raised the issue of M.B.'s homosexuality during its direct examination of M.B., thereby "opening the door." Lessley asserts that the State's reason for eliciting this testimony is clear: If the jury hears that M.B. has sexual relationships only with women, the possibility that she would consent to sex with Lessley becomes less likely. Lessley argues that once M.B. testified she is a lesbian, the State should not have been allowed to hide behind § 28-321 and claim that any rebuttal evidence is barred by that statute. Lessley argues that once the door is opened in relation to M.B.'s sexual orientation, Lessley must have an opportunity to rebut that testimony with relevant evidence.

The concept of "opening the door" is a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999), citing *Clark v. State*, 332 Md. 77, 629 A.2d 1239 (1993). The rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal. *State v. Harrold, supra*, citing *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984). "Opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue. *State v. Harrold*, 256 Neb. at 855, 593 N.W.2d at 318, quoting *Clark v. State, supra*.

Lessley relies on *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996), where the court determined that although the rape shield

statute bars evidence of a rape victim's sexual orientation and past sexual conduct, the defense may still introduce such evidence if the prosecution makes the evidence relevant by " 'opening the door' " to the evidence. In *People v. Murphy, supra*, the male defendant was charged with sexual assault for performing sadistic homosexual acts against the male victim without the victim's consent. The defendant's defense was that the encounter with the victim was consensual. At trial, the prosecutor informed the jury in his opening statement that the victim had a common-law wife and a daughter. The victim also testified to those facts and stated that his encounter with the defendant was " 'sick and abnormal.' " *Id.* at 193. When the prosecutor asked the victim why he was not aroused by the encounter with the defendant, the victim responded " 'I'm not that kind.' " *Id.*

Prior to cross-examining the victim, defense counsel moved for permission to ask the victim about his homosexual tendencies and the victim's prior sexual contact with another man, arguing that the prosecutor's opening statement and the victim's testimony had opened the door to such cross-examination. The trial court denied the defendant's motion, concluding that the issue of sexual orientation was not relevant.

Upon review by the Colorado Supreme Court, the court determined that although Colorado's rape shield statute bars evidence of a rape victim's sexual orientation and past sexual conduct, the defense may still introduce such evidence if the prosecution makes the evidence relevant by "opening the door" to the evidence. *Id.* The court ultimately concluded that the testimony concerning the victim's common-law wife and his child and statements made amounting to denials of a homosexual preference did not meet the threshold for "opening the door" to otherwise inadmissible evidence. *Id.* However, the Colorado Supreme Court's holding was based on grounds not present in the case at hand. The court's holding was based on its determination that the record reflected that the defendant was allowed to rebut any inference of heterosexuality created by the testimony, despite the trial court's refusal to admit evidence of the victim's sexual orientation as shown by his past sexual conduct. *Id.* At trial, the defendant was allowed to present an expert witness who rebutted any inference that a person who has been married is neces-

sarily heterosexual by testifying that it is not uncommon for homosexuals to be married and have children. In addition, the court determined that the defense made an insufficient offer of proof and thus did not meet the requirements of the rape shield statute. *Id.*

Another factually similar case to the one at hand is *State v. Williams*, 21 Ohio St. 3d 33, 487 N.E.2d 560 (1986), where the defendant appealed his conviction on two counts of rape, alleging that the trial court erred in finding inadmissible evidence of the victim's reputation as a prostitute and evidence of a witness' prior sexual relations with the victim.

At trial, the victim testified that she did not have sex with men because she was "gay." On cross-examination, the defense was allowed to ask the victim whether her testifying that she was gay was offered for the purpose of inferring that she would not voluntarily have sex with a male person. The victim responded that that was the intended purpose. Later during the trial, the defense presented a male witness who attempted to testify about his prior sexual relations with the victim. The State objected, and the evidence was stricken from the record. Defense counsel then proffered the testimony of the witness concerning his prior sexual activity with the victim and the victim's reputation as a prostitute.

The Supreme Court of Ohio concluded that the probative value of the proffered testimony outweighed the interest the State had in its exclusion. *Id.* The court held:

> The contested issue in this case is *consent* . . . . The victim testified on direct examination that she *never* consents to sex with men. The testimony proffered by [defendant] directly refutes this contention. [T]his evidence is submitted for more than mere impeachment of a witness' credibility. . . . [T]he proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged.

*Id.* at 36, 487 N.E.2d at 562-63.

Lessley argues that when M.B. testified she is a lesbian, she "opened the door" in relation to her past sexual behavior, and that Lessley's right to confrontation was violated when he was not given the opportunity to rebut that testimony. This court has

not decided a case in which evidence inadmissible under § 28-321 was found to be admissible on constitutional grounds. This theory of admissibility was argued in *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997), but we did not reach the constitutional issue in that case. In *State v. Sanchez, ante* p. 291, 597 N.W.2d 361 (1999), we concluded that there may be circumstances in which the accused's constitutional right to confrontation would require admission of evidence concerning a victim's prior sexual behavior which would be inadmissible under the rape shield law. We conclude that such circumstances are present in the case at hand. The only issue in this case was whether the encounter between M.B. and Lessley was consensual. Whether intended by the State or not, M.B.'s testimony on direct examination regarding her sexual preference and experience permitted the jury to draw an inference that she did not consent to sexual relations with Lessley. The evidence proffered by the defense would have made this critical inference less probable. The trial court's exclusion of this evidence was error because it materially impaired Lessley's Sixth Amendment right to confront his accuser on the dispositive issue of consent.

The denial of a defendant's right of confrontation is subject to harmless error analysis. *Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State v. Johnson*, 255 Neb. 865, 587 N.W.2d 546 (1998). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Johnson, supra*; *State v. Buechler*, 253 Neb. 727, 572 N.W.2d 65 (1998). An erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that error was harmless beyond a reasonable doubt. *State v. Johnson, supra*; *State v. Buechler, supra*. We cannot conclude that the trial court's error was harmless beyond a reasonable doubt. The trial court's refusal to permit Lessley to present evidence of M.B.'s sexual past when the State opened the door to such testimony constituted reversible error that entitles Lessley to a new trial.

Because we are remanding for a new trial, we need not address whether Lessley's sentence was excessive.

## CONCLUSION

The prosecution "opened the door" in relation to M.B.'s past sexual behavior when it elicited testimony from M.B. that she is a lesbian and had never previously engaged in the type of sexual act which she accused Lessley of committing against her will. The testimony created an inference that M.B. would not consent to anal intercourse with Lessley. Lessley's right to confrontation was violated when he was not allowed to rebut the inference that M.B.'s testimony created.

REVERSED AND REMANDED FOR A NEW TRIAL.