IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. MUHIC

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
SECO MUHIC, APPELLANT.

Filed February 11, 2014.    No. A-13-160.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

IRWIN, MOORE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Seco Muhic appeals his conviction and sentence for driving under the influence of alcohol (DUI) with a concentration of .15 of 1 gram or more by weight of alcohol per 210 liters of breath and with at least two prior DUI convictions. On appeal, Muhic challenges the district court's refusal to allow Muhic to question the arresting officer about a preliminary breath test (PBT) performed on Muhic, the sufficiency of the evidence to support the assertion that his blood alcohol content was at least .15, and the sentence imposed. We find no merit and affirm.

## II. BACKGROUND

The events giving rise to this case occurred on or about January 2, 2012. On that evening, the Lincoln Police Department received a telephone call that a member of the fire department had observed a vehicle driving erratically. Officer Rusty Lashley received the call from dispatch and proceeded to the area of the reported erratic driver.

- 1 -

Lashley eventually pulled in behind the vehicle and observed it to be "traveling very slowly and then even com[ing] to a stop." Lashley testified that the vehicle was traveling less than 10 miles per hour in an area with a speed limit of 25 miles per hour and that the vehicle was impeding the flow of traffic. Lashley activated the lights on top of his patrol car, and the vehicle "drove slowly into [an apartment] parking lot as if it was going to stop, however, it continued to drive." Lashley then activated his patrol car's siren, and the vehicle, "at a very slow speed, approximately one mile an hour . . . continued through the parking lot for . . . about 120 feet before the vehicle actually did come to a stop."

When Lashley made contact with the driver, Muhic, Muhic was very slow to respond to Lashley's presence and Lashley had to knock on the vehicle's window to get Muhic's attention. After Lashley gave loud verbal commands and knocked on the vehicle's window, Muhic "just kind of continued to look around and slowly looked back. And then at one point it looked like he was trying to manipulate the window and the door, and he struggled to deal with that as well." Eventually, Lashley himself had to open Muhic's door to interact with him and Lashley turned the vehicle off for Muhic. Muhic appeared confused about where to locate his license, registration, and insurance information.

Upon Muhic's exiting of the vehicle, Lashley observed that Muhic was "unsteady on his feet" and "was using the vehicle for balance." Lashley also noticed a strong odor of alcoholic beverage or alcohol on Muhic's person. Lashley also noticed that Muhic's eyes were watery and red.

Lashley conducted the horizontal gaze nystagmus field sobriety test. Lashley testified that Muhic stopped following the stimulus and that Lashley observed each clue of impairment in each eye. Muhic had indicated that he had a leg injury which would have impaired his ability to walk in a straight line or stand on one leg, so Lashley did not perform additional field tests.

Muhic told Lashley that he had consumed one drink. Lashley testified that his observations were not consistent with that. Lashley testified that his opinion, based on his observations, was that Muhic was under the influence of alcohol and impaired.

Lashley then arrested Muhic and transported him to a detoxification center for administration of an Intoxilyzer test. Lashley testified that Muhic provided an insufficient sample on his first attempt to perform the Intoxilyzer test. On his second attempt, Muhic's sample indicated that his blood alcohol content was .220. The record indicates that the Intoxilyzer result was obtained approximately 1 hour 20 minutes after Lashley first made contact with Muhic and observed Muhic driving.

Lashley testified that during the 1 hour 20 minutes between his observation of Muhic driving and the Intoxilyzer result, he did not observe any signs of increased impairment or anything to indicate that Muhic was becoming more intoxicated. He testified that in his experience, if a person's alcohol content is rising, his or her behavior changes.

On cross-examination, Lashley acknowledged that it takes time for a body to absorb alcohol and that absorption continues after a person stops drinking. He also acknowledged that alcohol begins to dissipate at some point in time. He testified that he had no reason to believe that Muhic's blood alcohol content was lower when he was first contacted than when he was tested with the Intoxilyzer.

Muhic's counsel then asked Lashley if he performed "any type of test to measure his blood alcohol level earlier." Lashley acknowledged that he had given a test shortly after he stopped Muhic. Muhic's counsel then attempted to ask if the results of the PBT had been significantly lower than the later Intoxilyzer test result. The State objected to the proposed question and testimony, arguing that PBT results are not admissible in Nebraska.

The court sustained the State's objection. Muhic's counsel clarified that he was not asking for the actual PBT result, but, rather, was only seeking to ask if the result was substantially lower than the later Intoxilyzer test result. Muhic's counsel asserted that the State was "going to make an improper argument because they know that the test result was lower." Counsel for the State responded by indicating, "We don't know that because it's not admissible, because it's not evidentiary in value. The other question could be, was it above .15?" The State noted it could not ask that question. Muhic's counsel then argued the State could ask that question if he was allowed to ask whether the result was substantially lower than the Intoxilyzer result, and noted that

> if I ask the question, was it substantially lower? And he answers the question, yes, it was. If the State asks, was it above .15, and he gets to answer that question, I think I can say, well, the breath test is not admissible into evidence because it is not as precise [as the Intoxilyzer].

The court again sustained the State's objection. Muhic's counsel then asked to "just make that an offer of proof that, that's what I would ask him and that's what I anticipate the answer is going to --."

The jury returned a verdict of guilt, finding that Muhic was guilty of DUI and that he was guilty of DUI with a concentration of .15 of 1 gram or more by weight of alcohol per 210 liters of breath. The court sentenced Muhic to 3 to 4 years' imprisonment and revoked his operator's license for 15 years. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Muhic asserts that the district court erred in refusing to allow him to ask questions about the preliminary breath test results, that there was insufficient evidence to demonstrate that his blood alcohol content was .15 or greater when he was driving, and that the sentence imposed was excessive.

## IV. ANALYSIS

### 1. PRELIMINARY BREATH TEST

Muhic first asserts that the district court erred in sustaining the State's objection and in refusing to allow him to ask questions about the PBT results. We find no merit to this assertion.

The Nebraska Supreme Court has held that in Nebraska, the results of a PBT may be admitted in evidence for a limited purpose only. *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986). See *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984). The results of a PBT are admissible for the limited purpose of establishing probable cause. *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010); *State v. Klingelhoefer, supra*; *State v. Green, supra*. Muhic

acknowledges that the results of a PBT are generally inadmissible, except for the limited purpose of establishing probable cause.

Even where the results of a PBT are admissible to establish probable cause, there remain foundational requirements to admissibility. *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988). Foundation evidence must establish that statutory requirements have been met, including requirements that the method of performing the PBT has been approved by Nebraska's health department and that the testing officer possessed a valid permit issued by the department for such purpose. *Id.* The operator is required to perform all tests according to the checklist technique set forth in the Nebraska Administrative Code. *Id.* Prior to administering the PBT, the operator is required to verify that maintenance, repair, and calibration have been performed for the testing device by reviewing the maintenance record. *Id.* For example, in *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010), the Nebraska Supreme Court held that the results of a PBT were properly admitted to establish probable cause because the administering officer had testified that he followed the Nebraska Administrative Code in administering the PBT, that the breath testing device was calibrated, and that the required length of the required observation period elapsed between the initial contact with the defendant and administration of the PBT. See, also, *State v. Scheffert, supra* (evidence establishing defendant was in position where no event could have tainted results of PBT satisfied foundational requirement of elapsing of required length of required observation period).

In the present case, the State did not attempt to introduce the results of the PBT at all. Indeed, Lashley was not asked during direct examination and did not testify about a PBT even being performed. As a result, Lashley did not testify about any of the necessary foundational requirements for the results to be admissible even for their limited purposes.

Muhic attempted to elicit testimony about the results of the PBT and argued that he should be able to do so because the State had "opened the door" to such testimony. Muhic's assertion is that Lashley testified that he did not observe any signs of increased impairment between the time of his initial contact and administration of the Intoxilyzer test approximately 1½ hours later and that, in his experience, if a person's blood alcohol content is rising, there would be signs of increased impairment. On cross-examination, Lashley testified that it takes time for the body to absorb alcohol and that it continues to do so after a person stops drinking, and that the alcohol also begins to dissipate at some point in time. He testified that he had no reason to believe that Muhic's blood alcohol content was lower when first contacted than at the time of the Intoxilyzer test. Muhic's counsel then asked if a PBT had been administered.

Muhic's counsel indicated that "all I'm going to ask him is, did you test him earlier, was it significantly lower when you tested him earlier? That is reason to believe that the blood alcohol level was going up as opposed to going down." A fairly lengthy exchange of conversation between Muhic's counsel, the State's counsel, and the court ensued, and the court then sustained the State's objection and held that it would not allow the question. Muhic's counsel then asked, "[C]ould I just make that an offer of proof that, that's what I would ask him and that's what I anticipate the answer is going to --." The court sustained the State's objection to the offer of proof.

In this case, we find no error in the district court's refusal to allow Muhic to question Lashley about the results of the PBT. As noted, such results are generally admissible only for

limited purposes and, even then, are admissible only when sufficient foundation has been established. In this case, there was no foundation for admission of the PBT results for any purpose. Moreover, Muhic's offer of proof did not indicate that sufficient foundation existed for admission of the PBT results for any purpose.

Muhic's offer of proof did not clearly indicate what Lashley would testify to--whether the results actually were significantly lower than the subsequent Intoxilyzer test results. Muhic's offer of proof did not include any assertion that he could establish any of the foundational elements concerning calibration, maintenance, or the observation period that necessarily are crucial to the results of a PBT being reliable for any purpose. In addition, Muhic's offer of proof did not include any assertion that he would be able to establish that even if the results of the PBT were significantly lower than the subsequent Intoxilyzer test results that such a result actually correlates to Muhic's blood alcohol content being significantly lower; without sufficient foundation to establish minimal reliability of the PBT, Muhic has failed to establish any reasonable correlation.

Muhic argues that the present case is comparable to the situation presented in *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999). We disagree, for many of the reasons already iterated.

In *State v. Lessley, supra*, the defendant was charged with first degree sexual assault and sought, on cross-examination, to elicit testimony from the victim's coworker about comments the victim had allegedly previously made about past sexual activity. In that case, the assertion was that the defendant had subjected the victim to anal intercourse without her consent, and the defendant asserted that the activity was consensual. During testimony elicited by the State, the victim testified that she was a lesbian and had "'never, ever engaged in anything like that.'" *Id.* at 905, 601 N.W.2d at 524. She also testified that she did not know if the defendant had ejaculated during the incident because she was a lesbian "and [they] don't do that." *Id.*

The defendant in *State v. Lessley* wanted to elicit testimony from a coworker that the victim had previously told him that she had anal sex with men to avoid becoming pregnant. The court had ruled prior to trial that such testimony would not be allowed, under the rape shield law. On cross-examination, the victim was specifically asked if she had told a coworker that, and she denied it. The defendant again sought to be allowed to have the coworker testify, both because the State had "opened the door" and to impeach the victim's testimony from cross-examination.

In *State v. Lessley*, the Nebraska Supreme Court held that the State had opened the door and that the testimony was admissible. The court held that whether intended or not, the State had elicited testimony regarding the victim's sexual preference and experience that permitted the jury to draw an inference that she did not consent to having anal sex. The court held that the evidence proffered by the defendant would have made that inference less probable, and denial of the evidence violated the defendant's Sixth Amendment right to confrontation.

In the present case, Muhic argues that the State similarly "opened the door" by eliciting testimony from Lashley that permitted an inference that Muhic's blood alcohol content was not increasing prior to the Intoxilyzer test being administered. Muhic argues that the results of the PBT, if they were actually significantly lower, might have tended to make that inference less probable. Additionally, Muhic attempted to present the results of the PBT to impeach Lashley's

testimony that he had no reason to believe that Muhic's blood alcohol content was significantly lower prior to administration of the Intoxilyzer test.

We do not find Muhic's argument persuasive. In *State v. Lessley, supra*, the defendant clearly demonstrated what the proffered testimony would have been. It was readily apparent how that proffered testimony would have tended to make less probable the inference established by the State's questioning, and it was readily apparent how the proffered testimony would have impeached the testimony of the victim. None of those is true in the instant case. As noted, Muhic's offer of proof did not even establish that the results of the PBT were actually significantly lower than the subsequent Intoxilyzer test. More important, however, Muhic's offer of proof did not include any indication of the necessary foundational requirements that establish reliability of a PBT for even its limited admissibility or any indication of the correlation between a PBT and the subsequent blood alcohol content established by the Intoxilyzer test. As such, Muhic's offer of proof did not establish how the results of the PBT might have tended to make less probable any inference established by the State's questioning of Lashley or how the results might have impeached Lashley's testimony.

We find no merit to Muhic's assertion that the district court erred in sustaining the State's objection and refusing to allow him to elicit testimony about the results of the PBT.

### 2. SUFFICIENCY OF EVIDENCE

Muhic next asserts that the State did not adduce sufficient evidence to establish that his blood alcohol content when he was operating a motor vehicle was .15 of 1 gram or more by weight of alcohol per 210 liters of breath. We find no merit to this assertion.

Under Neb. Rev. Stat. § 60-6,201(1) (Reissue 2010), any chemical test conducted according to methods approved by the Nebraska Department of Health and Human Services and with a valid permit shall be competent evidence in a prosecution for operating a motor vehicle when the concentration of alcohol in the blood or breath exceeds allowable levels. *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010). The Nebraska Supreme Court has specifically held that "matters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than to admissibility of the evidence" and that "[a] valid breath test given within a reasonable time after the accused was stopped is probative of a [DUI] violation." *State v. Kubik*, 235 Neb. 612, 634, 456 N.W.2d 487, 501 (1990). The State is not required to prove a temporal nexus between the test and the defendant's alcohol level at the moment he or she was operating the vehicle. *State v. Dinslage, supra*; *State v. Kubik, supra*. It would be an impossible burden on the State to conduct an extrapolation and provide a conclusive temporal nexus. *State v. Dinslage, supra*.

It is true that "[i]n some cases, the delay may be so substantial as to render the test results nonprobative of the accused's impairment or breath alcohol level while driving." *State v. Kubik*, 235 Neb. at 634, 456 N.W.2d at 501. In *State v. Blackman*, 254 Neb. 941, 580 N.W.2d 546 (1998), the Nebraska Supreme Court upheld a DUI conviction where the delay between an officer's receiving a dispatcher's notice that a motorcycle was observed in a ditch and administration of an Intoxilyzer test was approximately 1½ hours. Despite a lack of any direct evidence of the defendant's blood alcohol content when he was actually in control of the motorcycle, the evidence was sufficient to support a finding that the defendant had been DUI.

Similarly, in *State v. Rodgers*, 2 Neb. App. 360, 509 N.W.2d 668 (1993), this court upheld a DUI conviction where the delay between the driver being stopped and administration of a breath test was 1 hour 42 minutes. In so doing, we referenced the Nebraska Supreme Court's decision in *State v. Kubik, supra*, which cited with approval cases in which the delay in administration of a breath test was up to 2 hours 45 minutes after the driver was stopped. See, e.g., *State v. Taylor*, 132 N.H. 314, 566 A.2d 172 (1989) (1-hour-15-minute delay); *Com. v. Slingerland*, 358 Pa. Super. 531, 518 A.2d 266 (1986) (1-hour-23-minute delay); *Com. v. Speights*, 353 Pa. Super. 258, 509 A.2d 1263 (1986), appeal denied 517 Pa. 594, 535 A.2d 83 (1987) (2-hour-45-minute delay).

In the present case, the State adduced evidence that the results of the Intoxilyzer test administered approximately 1 hour 20 minutes after Lashley made contact with Muhic and observed Muhic driving revealed a blood alcohol content of .220. Lashley testified about his observations of Muhic upon his initial contact, including Muhic's being very slow to respond to Lashley's presence, difficulty manipulating the window and door of his vehicle, and confusion about where to locate his license, registration, and insurance information. Lashley had to open the vehicle door for Muhic and had to turn Muhic's vehicle off for him. Upon Muhic's exiting the vehicle, Lashley observed that Muhic was unsteady on his feet, and Lashley observed a strong odor of alcoholic beverage or alcohol on Muhic's person and observed that Muhic's eyes were watery and red.

Lashley testified that he did not observe any signs of increased impairment from the time of his initial contact and observations and the subsequent administration of the Intoxilyzer test. He did not observe anything to suggest that Muhic was "drunker" at the time of the Intoxilyzer test.

We find no merit to Muhic's assertion that the State adduced insufficient evidence to establish that his blood alcohol content was .15 or greater at the time he was operating a motor vehicle.

### 3. EXCESSIVE SENTENCE

Finally, Muhic asserts that the district court imposed an excessive sentence. Muhic's sentence was within statutory limits, and there is no apparent abuse of discretion. This assigned error is meritless.

Sentences imposed within statutory limits will be disturbed on appeal only if the sentences complained of were an abuse of judicial discretion. *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, or evidence. *Id.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and

includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Driving under the influence, third offense, with more than .15 of 1 gram of alcohol per 210 liters of breath is a Class IIIA felony offense. Neb. Rev. Stat. §§ 60-6,196 (Reissue 2010) and 60-6,197.03(6) (Cum. Supp. 2012). A Class IIIA felony offense is punishable by up to 5 years' imprisonment, a fine of $10,000, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012).

Muhic was sentenced to 3 to 4 years' imprisonment, clearly within the statutory limits for this offense. Muhic's assertion that his sentence was excessive is based entirely on an assertion that the district court failed to fully consider and weigh the relevant sentencing factors. Specifically, Muhic asserts that the court failed to consider his rehabilitative needs and his desire to treat his addiction but lack of an effective support system.

At the time of sentencing, the district court specifically indicated that it had "consider[ed] a number of factors" and had "take[n] into consideration all of the comments of [Muhic's] attorney, and all of the information in the Presentence Report." The court was influenced by Muhic's criminal history and prior record of alcohol-related problems. This was a third-offense DUI with an aggravated blood alcohol level, where Muhic was observed driving on a public roadway while highly intoxicated. There was no abuse of discretion by the district court in imposing this sentence, and Muhic's assertion to the contrary is meritless.

## V. CONCLUSION

We find no merit to Muhic's assertions on appeal. The district court did not err in refusing to allow Muhic to elicit testimony about the results of a PBT, there was sufficient evidence to support the conviction, and the sentence imposed was not excessive. We affirm.

AFFIRMED.