STATE OF NEBRASKA, APPELLEE, V.
ESTELLE M. CONN, APPELLANT.
685 N.W.2d 357

Filed July 13, 2004.    No. A-03-438.

Michael J. Shaughnessy, of Shaughnessy Law Office, for appellant.

Jon Bruning, Attorney General, Kimberly A. Klein, and, on brief, Ronald D. Moravec for appellee.

IRWIN, Chief Judge, and SIEVERS and CASSEL, Judges.

SIEVERS, Judge.

Estelle M. Conn appeals from the decision of the district court for Sherman County finding her guilty of conspiracy to commit murder in the first degree, a Class II felony.

## FACTUAL BACKGROUND

Bobby Joe Conn and Alicia L. Conn were married on January 20, 2000, and had a daughter, Breeahana Lee Conn (Bree), on May 26. Bobby Joe and Alicia separated on February 15, 2001. For several months prior to the separation, Bobby Joe, Alicia, and Bree had been living in the home of Bobby Joe's parents, Robert Conn and Estelle, in Johnson, Nebraska. During that time, conflicts concerning Bree's care arose between Alicia and Bobby Joe, Robert, and Estelle. After Alicia's separation from Bobby Joe, she moved to Litchfield, Nebraska, with Bree and filed a petition for legal separation from Bobby Joe in which she sought physical custody of Bree. Thereafter, Bobby Joe filed a petition for divorce, seeking joint custody of Bree.

During the summer and early fall of 2001, Bobby Joe, Robert, and Estelle had various conversations with Benjamin J. Biaggi and Thomas D.A. Moore, soliciting the murder of Alicia due to her alleged mistreatment of Bree. Although, during at least the initial conversation, Estelle remained silent. Biaggi, who had been acquainted with Bobby Joe and Alicia in high school, moved into Bobby Joe, Robert, and Estelle's residence in August 2001. In the early morning hours of September 26, Biaggi and Moore drove from Johnson to Litchfield at the behest of Bobby Joe, Robert, and Estelle. At Alicia's apartment in Litchfield, Biaggi fired a shotgun at Alicia in an unsuccessful attempt to kill

her. Afterward, Biaggi and Moore returned to Bobby Joe, Robert, and Estelle's residence in Johnson. Later on September 26, Estelle drove Biaggi to Lincoln, Nebraska, where he boarded a bus bound for Colorado.

Pursuant to agreements with the State for reduced charges, Moore and Biaggi both testified that Estelle was an active participant in the conversations in which the solicitation of Alicia's murder was discussed. Both testified that Estelle made comments like "[Alicia] needs to be taken out" and "I want the F-ing bitch dead." Prior to September 25, 2001, Estelle first showed Moore a computer-generated picture of Alicia and later showed him an actual photograph. Estelle told Moore that he would be able to identify Alicia because she had a tattoo of "Tweetie Bird" on her leg. Estelle also drove Biaggi to his grandmother's house near Humboldt, Nebraska, to retrieve the shotgun that was to be used to kill Alicia. On September 25, Estelle gave Biaggi a bag containing a cellular telephone and a radar detector. Estelle said the cellular telephone was to be used to keep in contact and to let her know when the job was done.

## PROCEDURAL BACKGROUND

Robert was subsequently charged, convicted, and sentenced in the district court for Sherman County for false reporting and conspiracy to commit murder in the first degree for his involvement in the conspiracy to kill Alicia. Robert appealed to this court. See *State v. Conn*, No. A-02-1421, 2003 WL 22331485 (Neb. App. Oct. 14, 2003) (not designated for permanent publication). Bobby Joe was also charged, convicted, and sentenced in the district court for Sherman County for conspiracy to commit murder in the first degree for his involvement in the conspiracy to kill Alicia. Bobby Joe appealed to this court, and we affirmed the district court's decision. See *State v. Conn*, No. A-02-1260, 2003 WL 22479491 (Neb. App. Nov. 4, 2003) (not designated for permanent publication).

In the instant case, Estelle was charged in the district court for Sherman County with conspiracy to commit murder in the first degree in violation of Neb. Rev. Stat. §§ 28-202 and 28-303 (Reissue 1995), a Class II felony, for her alleged involvement in the conspiracy to kill Alicia. Trial was held on February 3 through

6, 2003. The jury found Estelle guilty of conspiracy to commit murder in the first degree. On March 21, Estelle was sentenced to a prison term of 10 to 20 years. Estelle appeals.

## ASSIGNMENTS OF ERROR

Estelle alleges, restated, that (1) the district court erred in allowing testimony of alleged coconspirators and (2) she was denied her right to a fair trial because of trial counsel's ineffectiveness in failing to object to the hearsay testimony of the coconspirators Moore and Biaggi.

## STANDARD OF REVIEW

In proceedings where Nebraska statutes involving the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Hobby*, 9 Neb. App. 89, 607 N.W.2d 869 (2000). The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Id.*

## ANALYSIS

Estelle argues that the district court erred in allowing the testimony of Moore and Biaggi, two of her alleged coconspirators. However, "[a] party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection." *State v. Harris*, 263 Neb. 331, 339, 640 N.W.2d 24, 33 (2002). Furthermore, the failure to make a timely and proper objection or motion to strike will ordinarily bar a party from later claiming error in the admission of testimony. *Id.* Because Estelle did not object at trial to the testimony of her coconspirators Moore and Biaggi, she may not now raise the issue on appeal except in the context of the claim of ineffective assistance of counsel, which she makes.

We use the well-known two-part test for proving a claim of ineffective assistance of counsel, as set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993). To establish that he or she was denied effective assistance of counsel, the defendant must

show that counsel was deficient, meaning that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. The defendant must also make a showing that he or she was prejudiced by the actions or inactions of his or her counsel by demonstrating with reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *Strickland, supra.* The two-part test for ineffective assistance of counsel may be addressed in any order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). Because the record does not contain any evidence why trial counsel did not object and because there could be valid strategic reasons for not objecting, we focus on the prejudice component of the *Strickland* test.

Because Estelle's claim of ineffective assistance of counsel derives from the admissibility of Moore's and Biaggi's testimonies as coconspirators, we turn to the admissibility of their testimonies as to what Estelle said, which, if believed, obviously places her at the heart of the plot to kill Alicia. The Nebraska rules of evidence provide that a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Neb. Evid. R. 801(4)(b), Neb. Rev. Stat. § 27-801(4)(b) (Reissue 1995). To be admissible, the statements of the coconspirator must have been made while the conspiracy was pending and in furtherance of its objects; and if the statements took place after the conspiracy had ended, or if merely narrative of past occurrences, they are not admissible. *State v. Bobo*, 198 Neb. 551, 253 N.W.2d 857 (1977). However, the matter of the admissibility of a coconspirator's statements about what a defendant said is a bit more complicated.

> [T]he rule is well established that before the trier of fact may consider testimony under the coconspirator exception to the hearsay rule, a prima facie case establishing the existence of the conspiracy must be shown by independent evidence. . . . The purpose for this rule is to prevent hearsay evidence from being lifted by its own bootstraps, i.e., relying on the hearsay statements to establish the conspiracy

and then using the conspiracy to permit the introduction of the hearsay as evidence in the case.

*State v. Hansen*, 252 Neb. 489, 498, 562 N.W.2d 840, 848 (1997). Accord *Bobo, supra.* The phrase "prima facie" can " 'probably be defined only in terms of sufficient evidence to permit the trial court reasonably to infer that there existed a conspiracy.' " *State v. Copple*, 224 Neb. 672, 693, 401 N.W.2d 141, 156 (1987) (quoting *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490 (1966)), *abrogated on other grounds, State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

"The requirement of prima facie proof is less stringent than that of a preponderance of the evidence. The former requires only enough evidence to take the question to the jury whereas the latter requires 'proof which leads the jury to find that the existence of the contested fact is more probable than its nonexistence.' "

*Id.* (quoting *United States v. Trotter*, 529 F.2d 806 (3d Cir. 1976).

The record in the instant case contains evidence establishing a prima facie case of conspiracy. First, Estelle showed Moore a computer-generated picture of Alicia and an actual picture of her. Second, Estelle drove Biaggi to his grandmother's house to retrieve the shotgun which was later used in an attempt to kill Alicia. Third, Estelle gave Biaggi a bag with a cellular telephone and a radar detector. Finally, on September 26, 2001, Estelle drove Biaggi to Lincoln, where he fled via a bus bound for Colorado. But the testimony about what Estelle said was admitted before such other evidence.

Pursuant to the rule stated in *Hansen, supra*, ideally the State should have established a prima facie case of conspiracy before Moore's and Biaggi's hearsay statements were offered into evidence. The State failed to adduce its evidence in the order necessary to establish the prima facie case that a conspiracy existed before it offered the evidence of the statements made by Estelle in the presence of Moore and Biaggi. Nonetheless, there was independent evidence of the conspiracy apart from Moore's and Biaggi's testimonies of Estelle's statements. Had the State offered the evidence in a different order, there would be no question that the testimonies of Moore and Biaggi—stating that Estelle had said "[Alicia] needs to be taken out" and "I want that

F-ing bitch dead"—would be admissible under the coconspirator exception to the hearsay rule, because the statements were made in the course and in furtherance of the conspiracy.

In our view, *Hansen, supra,* makes it quite clear that the test ultimately is whether there is prima facie proof of the conspiracy, independent of the hearsay statements of the conspirator. The issue present in *Hansen* as in the instant case is whether trial counsel should have objected to what one conspirator testified regarding what another conspirator had said. The court in *Hansen,* 252 Neb. at 498-99, 562 N.W.2d at 848, said:

> Regardless of whether a prima facie case of conspiracy had been established at the time Murry's statement was first introduced, we conclude that the sum of the evidence submitted at trial, considered independently from the declaration in question, established a prima facie case of a conspiracy between Murry and Hansen. As such, the declaration would ultimately have been admissible under the coconspirator exception to the hearsay rule.

Other jurisdictions have also recognized that the order of proof is not necessarily determinative. See, *United States v. Fleishman,* 684 F.2d 1329 (9th Cir. 1982) (independent evidence may be circumstantial, order of proof is within discretion of trial judge, and facts presented must be viewed in light most favorable to government); *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490 (1966) (ordinarily, hearsay statements of alleged coconspirators should not be admitted until prima facie showing of existence of conspiracy is made, but some latitude must be allowed trial court in determining order of proof; where examination of record as whole shows facts from which trial court could reasonably infer existence of conspiracy, case ought not to be reversed because proof of conspiracy came at wrong time).

From the foregoing authority, we hold that the State need not necessarily establish prima facie proof of the conspiracy before the coconspirator statements falling under § 27-801(4)(b) are admissible, if the sum of the evidence ultimately makes the prima facie showing. This is particularly true in the context of an ineffective assistance of counsel claim, as in the instant case. Thus, while it can be argued that an objection should have been made regarding Moore's and Biaggi's hearsay statements, there

was no prejudice to Estelle, because the prima facie case was eventually established when the entirety of the State's evidence was considered. Finally, while clearly wary of potential problems in jury instruction created by the conditional admission of conspirator evidence subject to later " 'connecting up' " by other evidence, the court in *State v. Copple*, 224 Neb. 672, 694, 401 N.W.2d 141, 157 (1987), *abrogated on other grounds, State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), recognizes that such an approach has validity. In conclusion, Estelle's claim of ineffective assistance of counsel is without merit, because while it is arguable that trial counsel could have objected to Moore's and Biaggi's statements, Estelle suffered no prejudice as a result of such failure.

## CONCLUSION

Therefore, we affirm Estelle's conviction and sentence for conspiracy to commit murder in the first degree.

AFFIRMED.